365 So.2d 210 (1978)
METROPOLITAN DADE COUNTY, Florida, a Political Subdivision of the State of Florida, Appellant,
v.
Otis W. SHIVER, Individually, North Dade Oceanfront Resort Owners Association, an Unincorporated Association, Marco Polo Hotel, a Florida Corporation, Serita Elwood, Individually and Shiver Enterprises, Inc., a Florida Corporation, Appellees, and
Miami Dolphins, Ltd., a Florida Limited Partnership, Intervenor/Appellee.
No. 78-2031.
District Court of Appeal of Florida, Third District.
December 12, 1978.
*211 Stuart L. Simon, County Atty., for appellant.
Frates, Floyd, Pearson, Stewart, Richman & Greer and Gerald F. Richman, Paul & Thomson and Jon W. Zeder, Miami, for appellees.
Before HENDRY and HUBBART, JJ., and CHARLES CARROLL (Ret.), Associate Judge.
HUBBART, Judge.
This is an action for declaratory and injunctive relief seeking to restrain the holding of a referendum election on a certain county tax ordinance in the Circuit Court for the Eleventh Judicial Circuit of Florida. The trial court granted the injunction from which an appeal was taken to this court. After full briefs and argument, this court entered an order reversing the order under review and placed the said election issue back on the November 7, 1978 ballot. This opinion more fully explains our reasons for taking such action.
The controlling facts in this case are undisputed. The Board of County Commissioners of Dade County, Florida enacted an ordinance subject to voter approval imposing a certain tourist development tax pursuant to Section 125.0104, Florida Statutes (1977) throughout Dade County, Florida except within the municipal limits of Miami Beach, Bal Harbour, and Surfside where municipal resort taxes were already in effect. This ordinance was placed on the ballot for the October 5, 1978 election. An action was thereafter filed by certain residents of Dade County to enjoin the holding of an election on such question before the Circuit Court for the Eleventh Judicial Circuit of Florida. On September 8, 1978, the trial court granted the injunction from which no appeal was taken.
On October 4, 1978, the Board of County Commissioners again met and duly enacted another ordinance similar to the above prior ordinance but calling for a voter referendum thereon to be held on the November 7, 1978 election. A resolution was also passed providing the language for the ballot question *212 on the referendum.[1] The plaintiff residents of Dade County Otis W. Shiver, et al., thereafter filed another action for declaratory and injunctive relief seeking to keep the above question off the November 7, 1978 ballot. On October 27, 1978, the trial court granted the injunctive relief requested from which Dade County duly appealed to this court. On November 2, 1978, this court reversed the trial court's final determination with an opinion to follow in due course. The question was thereupon placed on the November 7, 1978 ballot, and we are informed that the ordinance herein was approved by the voters at such election.
The law is well-settled that a court of equity as a general rule will not restrain the holding of an election because a free election in a democracy is a political matter to be determined by the electorate and not the courts. City of Deland v. Fearington, 108 Fla. 498, 146 So. 573 (1933); Joughin v. Parks, 107 Fla. 833, 143 So. 145 (1932); Dulaney v. City of Miami Beach, 96 So.2d 550 (Fla. 3d DCA 1957). Limited exceptions to this rule have been recognized but only on the narrowest of grounds. One such exception is where the election is being held in violation of an applicable legislative enactment. City of Miami Beach v. Herman, 346 So.2d 122 (Fla. 3d DCA 1977). Another is where the ballot question on a referendum is misleading and deprives the voter of an opportunity to know and to be on notice as to the proposition on which he is to cast his vote. Hill v. Milander, 72 So.2d 796 (Fla. 1954).
In the instant case, the trial court rested its decision to enjoin the holding of the election herein on two basic grounds, to wit: (1) the ballot question as framed violated Section 125.0104(6)(b), Florida Statutes (1977), and (2) the ballot question as framed was grossly misleading to the public. We disagree.
Section 125.0104(6)(b), Florida Statutes (1977), provides for the ballot language on the tourist development tax referendum herein in the following terms:
"(b) The governing board of the county levying the tax shall arrange to place a question on the ballot at the next regular or special election to be held within the county, substantially as follows:
... FOR the Tourist Development Tax
... AGAINST the Tourist Development Tax" [emphasis added]
The ballot question in the instant case reads in relevant part as follows:
... FOR THE TOURIST ROOM TAX
... AGAINST THE TOURIST ROOM TAX" [emphasis added]
In our view, this ballot language is in compliance with the above statute because the ballot contains, as the statute provides, "substantially" the same question as stated in the statute. The fact that the term "room" is used on the ballot, rather than the term "development" as used in the statute, does not significantly alter the statutory ballot language. This is particularly *213 true where, as here, there is some explanation on the ballot as to the purpose of the tourist tax, namely, to provide for tourist development. It seems to us a highly technical and ultimately unconvincing reason to remove this referendum from the ballot based on this slight variation in ballot language. Indeed, the variation herein is de minimus.
Nor are we persuaded that the ballot question as framed is misleading and deprives the voter of an opportunity to know and to be on notice as to the proposition on which he is to cast his vote. The ballot question contains an essential, although not exhaustive, description of the tourist tax ordinance and its purposes. Surely, no voter who had done his homework would be misled thereby. It is true, as the trial court found[2], that certain of the details of the ordinance as well as some of its ramifications were either omitted from the ballot question or could have been better explained therein. That, however, is not the test. There is no requirement that the referendum question set forth the ordinance verbatim nor explain its complete terms at great and undue length. Such would hamper instead of aiding the intelligent exercise of the privilege of voting. Under our system of free elections, the voter must acquaint himself with the details of a proposed ordinance on a referendum together with the pros and cons thereon before he enters the voting booth. If he does not, it is no function of the ballot question to provide him with that needed education. What the law very simply requires is that the ballot give the voter fair notice of the question he must decide so that he may intelligently cast his vote. That requirement has been more than adequately met in this case. Hill v. Milander, 72 So.2d 796 (Fla. 1954).
We have considered the other contentions raised by the plaintiffs herein and find them insufficient as a basis for enjoining the holding of the tourist tax referendum in this cause. Dulaney v. City of Miami Beach, 96 So.2d 550 (Fla. 3d DCA 1957). The order under review is accordingly reversed.
Reversed.
NOTES
[1] The ballot language on such referendum reads as follows:

"TOURIST ROOM TAX
The Board of County Commissioners of Dade County, Florida, has adopted Ordinance No. 78-62 levying and imposing a Tourist Room Tax at the rate of two percent (2%) on hotel, motel, and similar accommodations rented for a term of six (6) months or less. Said ordinance further provides the following plan for the expenditure of the tax revenues received:
1. To fund a Tourist and Convention bureau. $437,900 (10 percent).
2. To promote and advertise Dade County tourism within domestic and international markets. $2,189,500 (50 percent).
3. To promote Dade County tourism by sponsoring tourist-oriented cultural and special events such as visual and performing arts including theater, concerts, recitals, opera, dance, art exhibitions, festivals and other tourist-related activities. $875,800 (20 percent).
4. To modernize and improve the present Orange Bowl Football Stadium including chairback seats, additional food and beverage concessions, additional and improved parking facilities and additional restrooms and construction. $875,800 (20 percent).
Shall this ordinance levying and imposing such Tourist Room Tax be approved?
FOR THE TOURIST ROOM TAX AGAINST THE TOURIST ROOM TAX"
[2] The trial court order appealed from states in pertinent part as follows:

"The Ballot Question is also grossly misleading to the public in that the phraseology of `imposing a Tourist Room Tax at the rate of two percent (2%) on hotel, motel, and similar accommodations' is not in accord with the Tourist Development Tax which subjects apartments, condominiums, rooming houses and trailer camps to the tax and such facilities are not similar accommodations to hotels and motels. The Defendant's Ballot Question also does not properly inform the electorate of relevant information in that: (1) no mention whatsoever is made of the fact that once the tax is approved the Defendant may pledge the revenues from the Tourist Development Tax to secure and liquidate revenue bonds; (2) no mention is made that the Plan to expend the revenues can be completely changed without a referendum once the tax is approved; (3) no mention is made of the fact that an estimated $681,000 of the revenue derived is for collection and administrative costs alone; (4) no mention is made of where the tax will be levied or of the fact that Bal Harbour, Miami Beach and Surfside are exempted from the Tourist Development Tax; and (5) no mention is made of the fact that electors in Bal Harbour, Miami Beach and Surfside are not permitted to vote on this question."