818 So.2d 491 (2002)
ADVISORY OPINION TO THE ATTORNEY GENERAL re RIGHT TO TREATMENT AND REHABILITATION for Non-Violent Drug Offenses.
No. SC01-1950.
Supreme Court of Florida.
May 16, 2002.
Robert A. Butterworth, Attorney General, and Louis F. Hubener, III, Assistant Attorney General, Tallahassee, FL, Presentor.
Stephen H. Grimes and Susan L. Kelsey of Holland & Knight, Tallahassee, FL, on behalf of Florida Campaign for New Drug Policies, Sponsor.
Simone Marstiller, Assistant General Counsel, Executive Office of the Governor, Tallahassee, FL, on behalf of Governor John Ellis "Jeb" Bush; Kenneth W. Sukhia of Fowler, White, Gillen, Boggs, Villareal *492 and Banker, P.A., Tallahassee, FL, on behalf of Save Our Society From Drugs, Inc.; Michael R. Ramage, General Counsel, The Florida Department of Law Enforcement, Tallahassee, FL, Amicus Curiae; Arthur I. Jacobs of Jacobs & Associates, P.A., Fernandina Beach, FL, The Florida Prosecuting Attorneys Association, Amicus Curiae; David P. Healy, Tallahassee, FL, on behalf of Florida Alcohol and Drug Abuse Association; and Martin Epstein, West Palm Beach, FL, Florida Association of Drug Court Professionals, Inc., Amicus Curiae.
SHAW, J.
The Attorney General has requested this Court to review a proposed amendment to the Florida Constitution. We have jurisdiction. See art. IV, § 10; art. V, § 3(b)(10), Fla. Const. We approve the amendment as explained below.

I. FACTS
The sponsor of the proposed amendment, the Florida Campaign for New Drug Policies, a Florida political committee, invoked the petition process of article XI, section 3, Florida Constitution, to seek placement of an amendment on the ballot via citizen initiative. The Secretary of State submitted the amendment to the Attorney General[1] and the Attorney General has petitioned this Court for an advisory opinion concerning the amendment's validity.[2]
The ballot title and summary of the proposed amendment, which are drafted to appear on the ballot, read as follows:

RIGHT TO TREATMENT AND REHABILITATION FOR NONVIOLENT DRUG OFFENSES.
Individuals charged or convicted of possessing or purchasing controlled substances or drug paraphernalia may elect appropriate treatment as defined, instead of sentencing or incarceration, for first two offenses; discretionary with court thereafter. Excludes individuals committing serious crimes in same episode or convicted or in prison for violent crimes in past five years. Individuals unamenable to treatment may be prosecuted or sentenced. Upon successful completion or eighteen months in treatment, no prosecution or sentencing. Legislative implementation.
The full text of the proposed amendment, which will not appear on the ballot but which will be posted in each voting precinct, reads as follows:
BE IT ENACTED BY THE PEOPLE OF FLORIDA THAT:
Article I, Section 26, Florida Constitution, is hereby created to read as follows:
Right to Treatment and Rehabilitation
(a) Any individual charged with or convicted of illegally possessing or purchasing a controlled substance or drug paraphernalia may elect to receive appropriate treatment as described in subsection (c), instead of being sentenced or incarcerated, which shall be a matter of right for the first and second offense after enactment of this section and at the discretion of the court for subsequent offenses. If more than one qualifying offense under this section occurs during a single criminal episode, it shall be considered a single offense. For purposes of this section, an individual who elects to receive appropriate treatment prior to conviction shall be deemed to have waived the right to a speedy trial.

*493 (b) This section shall not apply to any individual who in connection with the same criminal episode as the drug offense described in (a) is also charged with or convicted of: any felony; any misdemeanor involving theft, violence or the threat of violence; trafficking, sale, manufacture, or delivery of a controlled substance; purchase or possession with intent to sell, manufacture, or deliver a controlled substance or drug paraphernalia; or operating a vehicle under the influence of alcohol or a controlled substance. This section also shall not apply to any individual who, within five years before committing the drug offense described in (a), has been convicted of, or in prison for, one of the serious or violent crimes described in Section 775.084(1)(c)1.a.-r., Florida Statutes (2000), or such other violent crimes as may be provided by law.
(c) For purposes of this section, "appropriate treatment" means a state-approved drug treatment and/or rehabilitation treatment program, or set of programs, designed to reduce or eliminate substance abuse or drug dependency and to increase employability. Such program or programs shall include, as deemed appropriate, access to vocational training, literacy training, family counseling, mental health services, or similar support services. The determination of the type and duration of the appropriate treatment program or programs that an individual shall receive, and methods of monitoring the individual's progress while in treatment, shall be made by a qualified professional as defined in Section 397.311(25), Florida Statutes (2000).
(d) An individual receiving appropriate treatment under this section may be transferred to a different program due to violations of program rules or unsuitability to the form of treatment initially prescribed. An individual may be removed from appropriate treatment if, after multiple programs and violations, and upon an independent evaluation by a qualified professional as defined in Section 397.311(25), Florida Statutes (2000), the individual is found by the court to be unamenable to treatment and rehabilitation. Any such individual removed from appropriate treatment who has been convicted of the drug offense described in (a) may be sentenced for the offense. Prosecution may be recommenced against any individual removed from appropriate treatment who has not yet been convicted, and a conviction resulting from such prosecution may result in a criminal sentence without regard to this section.
(e) Appropriate treatment shall be terminated upon an individual's successful completion of the prescribed course of appropriate treatment, or upon an independent evaluation and finding by a qualified professional as defined in Section 397.311(25), Florida Statutes (2000), that an individual's appropriate treatment has been successful, or eighteen months after the date the individual elected to receive appropriate treatment, whichever occurs first. Upon termination of appropriate treatment, the individual may not be prosecuted, sentenced, or placed under continued court supervision for the offense which led to the appropriate treatment.
(f) This section shall become effective on July 1 of the year following passage by the voters, and shall apply prospectively only to qualifying drug offenses occurring on or after that date.
(g) The Legislature shall enact such laws as necessary to implement this section.
This Court invited interested parties to file briefs; the sponsor filed a brief in support *494 of the proposed amendment and numerous parties filed briefs in opposition.[3]

II. STANDARD OF REVIEW
Above all, the Florida Constitution embodies the right of self-determination for all Florida's citizens. This Court traditionally has been reluctant to interfere with this right by barring citizens from formulating their own organic law:
There is no lawful reason why the electors of this State should not have the right to determine the manner in which the Constitution may be amended. This is the most sanctified area in which a court can exercise power. Sovereignty resides in the people and the electors have a right to approve or reject a proposed amendment to the organic law of this State, limited only by those instances where there is an entire failure to comply with a plain and essential requirement of [the law].
Pope v. Gray, 104 So.2d 841, 842 (Fla. 1958).
This deference is especially appropriate in the case of proposed constitutional amendments arising through the citizen initiative process. Because such amendments often are initiated by ad hoc groups of concerned lay persons without formal legal training or prior experience in the field, such amendments are reviewed under a forgiving standard and will be submitted to the voters if at all possible:
[A] court's duty is to uphold the proposal unless it can be shown to be "clearly and conclusively defective."
Floridians Against Casino Takeover v. Let's Help Fla., 363 So.2d 337, 339 (Fla. 1978).
When determining the validity of an amendment arising via citizen initiative petition, our inquiry is limited to two issues: (1) whether the petition violates the single-subject requirement of article XI, section 3, Florida Constitution; and (2) whether the ballot title and summary violate the clarity requirements of section 101.161(1), Florida Statutes (2000).[4] We do not address the merits of the amendment.[5]

III. SINGLE SUBJECT RULE
Article XI, section 3, Florida Constitution, sets forth the requirements for a proposed constitutional amendment arising via citizen initiative. This section contains the single-subject rule:
SECTION 3. Initiative.The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people, provided that, any such revision or amendment, except for those limiting the power of government to raise revenue, shall embrace but one subject and matter directly connected therewith.

Art. XI, § 3, Fla. Const. (emphasis added). The purpose of the single-subject rule is twofold: to prevent "logrolling"[6] and to *495 prevent a single amendment from substantially altering or performing the functions of multiple branches of government and thereby causing multiple "precipitous" and "cataclysmic" changes in state government.[7]

A. "Oneness of Purpose"
This Court utilizes a "oneness of purpose" standard in applying the single-subject rule.[8] A proposed amendment meets this test when it "may be logically viewed as having a natural relation and connection as component parts or aspects of a single dominant plan or scheme. Unity of object and plan is the universal test...." City of Coral Gables v. Gray, 154 Fla. 881, 19 So.2d 318, 320 (1944).
The present proposed amendment is similar in key respects to the amendment in Advisory Opinion to the Attorney General re Stop Early Release of Prisoners, 661 So.2d 1204 (Fla.1995). There, the title and summary read as follows:
TITLE: STOP TURNING OUT PRISONERS: LIMIT EARLY RELEASE.
SUMMARY: A state constitutional amendment which, except for pardon or clemency, requires that state prisoners sentenced to a term of years shall serve at least eighty-five percent of their terms of imprisonment. Parole, conditional release, or any mechanism of sentence reduction may reduce the term of years sentence by no more than fifteen percent. State prisoners sentenced to life imprisonment shall be incarcerated for the rest of their natural lives, unless granted pardon or clemency.
Stop Early Release of Prisoners, 661 So.2d at 1205. The full text of the amendment provided as follows:
All state prisoners lawfully sentenced to a term of years shall serve at least eighty-five percent of their term of imprisonment, unless granted pardon or clemency. Parole, conditional release, or any mechanism of sentence reduction may reduce the term of years sentence by no more than fifteen percent. State prisoners sentenced to life imprisonment shall be incarcerated for the rest of their natural lives, unless granted pardon or clemency.
Id.
This Court approved the amendment, finding no single subject violation. The Court reasoned as follows:
Article XI, section 3 of the Florida Constitution provides that any constitutional amendment or revision by initiative "shall embrace but one subject and matter directly connected therewith." To comply with this provision the proposed amendment must manifest "a logical and natural oneness of purpose." Fine v. Firestone, 448 So.2d 984, 990 (Fla.1984). We find that the proposed amendment meets this criterion, as it deals with the sole subject of limiting sentencing reduction methods. The final provision pertaining to life sentences merely provides detail as to how the proposed amendment will be implemented in cases where life sentences are imposed.
Stop Early Release of Prisoners, 661 So.2d at 1206.
In the present case, the proposed amendment evinces a similar "oneness of *496 purpose," for the amendment has but one function: to establish a treatment and rehabilitation option for first- and second-time nonviolent drug offenders. The amendment sets forth a simple, straightforward constitutional framework for accomplishing this goal; it is a "no-frills" amendment. Just as the Court in Stop Early Release of Prisoners held that the "oneness of purpose" criterion was dispositive in that case, so too do we hold that the same criterion is dispositive in the present case.

B. Altering the Function of Multiple Branches

This Court has held that while most amendments will "affect" multiple branches of government this fact alone is insufficient to invalidate an amendment on single-subject grounds:
As the proponents of the amendment point out, the fact that an amendment affects multiple functions of government does not automatically invalidate a citizens' initiative. As we explained in detail in [a prior case]:
We recognize that the petition, if passed, could affect multiple areas of government. In fact, we find it difficult to conceive of a constitutional amendment that would not affect other aspects of government to some extent. However, this Court has held that a proposed amendment can meet the single-subject requirement even though it affects multiple branches of government.
Advisory Op. to Att'y Gen. re Fla. Transp. Initiative, 769 So.2d 367, 369-70 (Fla. 2000). The test is as follows:
A proposal that affects several branches of government will not automatically fail; rather, it is when a proposal substantially alters or performs the functions of multiple branches that it violates the single-subject test.

Advisory Op. to Att'y Gen. re Fish & Wildlife Conservation Comm'n, 705 So.2d 1351, 1353-54 (Fla.1998) (emphasis added).
In the present case, the proposed amendment may "affect" several branches of government but it does not substantially "alter" or "perform" the functions of those branches. First, the amendment does not usurp the function of the judiciary. Rather, the amendment leaves the prime function of the judiciary intact and in fact promotes that function by requiring judges to perform several quintessential judicial functions: determining eligibility for treatment under the amendment, entering orders to ensure compliance with prescribed regimens, responding to violations, and terminating treatment when appropriate.
Second, the amendment does not usurp the function of the Legislature. Rather, the amendment leaves the prime function of that body intact. The proposed net ban amendment in Advisory Opinion to the Attorney GeneralLimited Marine Net Fishing, 620 So.2d 997 (Fla.1993), deprived the Legislature of the right to designate certain behavior as criminal and to punish violations in any way other than the way prescribed in the amendment. In conducting its analysis of that amendment, the Court focused on the fact that the amendment "is functionally and facially unified." The Court held that the amendment did not violate the single-subject rule. Similarly, the present amendment, by proposing a uniform system for dealing with first-and second-time nonviolent drug offenders, is functionally and facially unified; it is far less invasive of legislative authority than the net ban amendment.
Third, the amendment does not substantially usurp the function of the executive branch. Rather, the amendment leaves the prime function of that branch intact, for it has no effect on the power of prosecutors *497 to charge persons with crimes where appropriate. The amendment contemplates that the charging of drug offenses will proceed as it always has; it is only after charging or conviction takes place that the amendment's diversion option is implicated. Florida law currently allows diversion for drug offenders on the motion of either party or the trial court itself.[9]

IV. BALLOT TITLE AND SUMMARY
Section 101.161, Florida Statutes (2000), sets forth the requirements for the ballot title and summary of a proposed constitutional amendment and provides in relevant part:
[T]he substance of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure. The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.
§ 101.161(1), Fla. Stat. (2000).
This Court in Save Our Everglades explained the meaning of section 101.161(1):
"[S]ection 101.161 requires that the ballot title and summary for a proposed constitutional amendment state in clear and unambiguous language the chief purpose of the measure." This is so that the voter will have notice of the issue contained in the amendment, will not be misled as to its purpose, and can cast an intelligent and informed ballot. However, "it is not necessary to explain every ramification of a proposed amendment, only the chief purpose."
Save Our Everglades, 636 So.2d at 1341.[10] In brief, the ballot title and summary must fairly inform the voter of the chief purpose of the amendment.
Opponents of the present amendment contend that the phrase "first two offenses" in the summary is misleading because it gives voters the impression that a first-time offender who committed two qualifying offenses as the result of a single criminal episode would have exhausted both treatment options under the amendment whereas the amendment in fact provides that a first-time offender who committed multiple qualifying drug offenses as the result of a single criminal episode would still be eligible for treatment upon reoffending a second time. We disagree.
The phrase "first two offenses" as used in the summary is an accurate representation of the text of the amendment; the amendment applies to only the first two nonviolent drug offenses. Although the details alleged by the opponents are accurate, the sponsors of the amendment were required to work within the statutory limit of seventy-five words for the entire summary. They used all seventy-five words. Had the sponsors explained the phrase "first two offenses" in the same detail that the opponents suggest, they would have violated the law. As noted above, this Court consistently has advised sponsors that "it is not necessary to explain every ramification of a proposed amendment."[11]
Opponents also contend that the phrase "Legislative implementation" is misleading because it is a sentence fragment that voters could construe as meaning that legislative implementation would be required *498 before the amendment would become effective; the amendment, however, in subsection (f) gives the amendment's effective date and only in subsection (g) are voters made aware that the Legislature is involved with this amendment because it "shall enact such laws as necessary to implement this section." We disagree.
The phrase "Legislative implementation" in fact is true. Subsection (g) of the text of the amendment states: "The Legislature shall enact such laws as necessary to implement this section." What the summary fails to say is that the framework established in the amendment is self-effectuating. Subsection (f) of the amendment states: "This section shall become effective on July 1 of the year following passage by the voters, and shall apply prospectively only to qualifying drug offenses occurring on or after that date." Although a "perfectly" drafted summary might mention this self-effectuating provision, imperfection is not necessarily fatal given the seventy-five word statutory maximum. The sponsors reasonably may have determined that it would have been misleading to fail to mention the legislative implementation provisionand they would have been correct.
Finally, opponents contend that the ballot title and summary are misleading because they imply that Florida is currently without any treatment plan for drug offenders; the ballot title and summary fail to mention the current diversion system or inform the voter that the proposed amendment is actually at odds in many respects with the current drug court scheme and other diversion programs. Again, we disagree.
The ballot title and summary say nothing to indicate that other drug treatment programs are nonexistent. Given the fifteen-word statutory maximum for the title and the seventy-five word maximum for the summary, it would have been impossible for the sponsors to include such detailed language concerning pre-existing programs. The sponsors did precisely as this Court has advised them to do in decision after decision: they apprised the voter of the chief purpose of the amendment.
It is true ... that certain of the details of the [text] as well as some of its ramifications were either omitted from the ballot question or could have been better explained therein. That, however, is not the test. There is no requirement that the referendum question set forth the [text] verbatim nor explain its complete terms at great and undue length. Such would hamper instead of aiding the intelligent exercise of the privilege of voting. Under our system of free elections, the voter must acquaint himself with the details of a proposed ordinance on a referendum together with the pros and cons thereon before he enters the voting booth. If he does not, it is no function of the ballot question to provide him with that needed education. What the law very simply requires is that the ballot give the voter fair notice of the question he must decide so that he may intelligently cast his vote. That requirement has been more than adequately met in this case.
Metropolitan Dade County v. Shiver, 365 So.2d 210, 213 (Fla. 3d DCA 1978). Had the sponsors of the present amendment attempted to advise the voters in the same detail proposed by the opponents, they would have hampered, not helped, the voting process, for they would have made the amendment more, not less, confusing.

V. CONCLUSION
The right of Floridians to decide whether to accept or reject a change of their own making in their own organic law is paramount. This Court has no authority *499 to inject itself in the process, unless the laws governing the process have been "clearly and conclusively" violated. This Court's inquiry under the single-subject rule is simple and straightforward: (1) does the proposed amendment engage in logrolling? and (2) does the proposed amendment cause multiple precipitous and cataclysmic changes in state government? The Court's inquiry into the validity of the ballot title and summary is equally simple: does the ballot title and summary fairly apprise the voter of the amendment's chief purpose?
In the present case, the answer to these questions is clear. The present amendment neither engages in logrolling nor causes multiple precipitous and cataclysmic changes in state government. In fact, it does not cause even a single precipitous and cataclysmic change. And the ballot title and summary fairly apprise the voter of the amendment's chief purpose.
Accordingly, we hold that the proposed amendment meets the requirements of article XI, section 3, Florida Constitution, and section 101.161, Florida Statutes (2000). We approve the amendment for placement on the ballot.
It is so ordered.
WELLS, C.J., and PARIENTE and QUINCE, JJ., concur.
ANSTEAD, J., concurs in part and dissents in part with an opinion, in which HARDING and LEWIS, JJ., concur.
ANSTEAD, J., concurring in part and dissenting in part.
Section 101.161(1) of the Florida Statutes governs the requirements for ballot titles and summaries and provides, in relevant part: "Whenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of such amendment or other public measure shall be printed in clear and unambiguous language on the ballot...." § 101.161(1), Fla. Stat. (2000). Under this provision the ballot summary must be complete and accurate and not be misleading as to the actual effects of the proposed amendment. As this Court stated in Term Limits Pledge: "When the summary of a proposed amendment does not accurately describe the scope of the text of the amendment, it fails in its purpose and must be stricken." Advisory Opinion to the Attorney Gen. re Term Limits Pledge, 718 So.2d 798, 804 (Fla. 1998). Upon review, I conclude that the proposed amendment's ballot title and summary are misleading because they use vague and ambiguous language to relate its chief purpose and to explain its critical features.
First, I find the term "first two offenses" to be misleading because it does not accurately or adequately convey the amendment's actual definition of "single criminal episode." The amendment itself provides: "If more than one qualifying offense under this section occurs during a single criminal episode, it shall be considered a single offense." Hence, the amendment provides that a first-time offender who committed multiple qualifying drug offenses as the result of a single criminal episode would still be eligible for treatment under this amendment upon reoffending a second time. However, the summary, when considered alone, gives voters the impression that a first-time offender who committed two qualifying offenses as the result of a single criminal episode (e.g., a defendant charged with possession of cocaine and possession of drug paraphernalia resulting from a single lawful search of her pocket), would only qualify once for treatment under this amendment. Thus, the summary's use of "first two offenses" does not accurately describe the wide *500 scope of the amendment's text. See Advisory Opinion to the Attorney Gen. re Casino Authorization, Taxation and Regulation, 656 So.2d 466, 469 (Fla.1995) (holding that the amendment's summary was misleading because it could lead voters to believe that only operational, floating vessels may house casinos, when the amendment authorized casinos on "stationary and non-stationary riverboats and U.S. registered commercial vessels").
Second, the term "legislative implementation" appears to be misleading because it could be read to mean that legislative implementation would be required before the amendment would become effective. The amendment itself, however, actually provides for the amendment's effective date in subsection (f). Only in subsection (g) are voters made aware that the Legislature is involved with this amendment because it "shall enact such laws as necessary to implement this section." Thus, the term "legislative implementation" does not accurately describe the proposed amendment's implementation as set forth in the amendment's text. See Save Our Everglades, 636 So.2d at 1341 (holding that the summary was "too misleading" because the phrase "to help to pay" gave readers the impression that entities other than the sugarcane industry would be sharing in the expense of cleanup but the amendment's text called for the levying of a fee on sugarcane processors exclusively).
Third, the title and summary are also misleading because they imply that Florida is currently without any treatment plan for drug offenders. Hence, the voter is left to falsely assume that Florida does not already have extensive diversion programs for first- and second-time drug offenders. Although the amendment's sponsor argues that it is intended to work in tandem with the present system of drug courts and diversion programs, the ballot title and summary fail to mention the current system. The summary also fails to inform the voter that the proposed amendment is actually at odds in many respects with the current drug court scheme and other diversion programs. See §§ 397.334, 948.08(6)(a), Fla. Stat. (2001). Thus, the summary is misleading because it fails to advise the electorate of the true meaning and ramifications of the amendment compared to the status quo. See Advisory Opinion to the Attorney Gen. re Tax Limitation, 644 So.2d 486, 494 (Fla.1994) (finding the Proposed Voter Approval of New Taxes Amendment misleading because it implied that there was no constitutional cap on taxes when there actually were such limitations for governmental entities in article VII, section 9, and inheritance and income taxes in article VII, section 5(b)).
HARDING and LEWIS, JJ., concur.
NOTES
[1] See § 15.21, Fla. Stat. (2000).
[2] See § 16.061(1), Fla. Stat. (2000).
[3] The following parties filed briefs in opposition: Governor Jeb Bush; Florida Alcohol and Drug Abuse Association; Save Our Society From Drugs, Inc.; Florida Association of Drug Court Professionals, Inc.; Florida Department of Law Enforcement; and Florida Prosecuting Attorneys Association. Additionally, the Attorney General filed a lengthy letter in opposition.
[4] See, e.g., Advisory Op. to the Att'y Gen., re Amendment to Bar Gov't From Treating People Differently Based on Race in Pub. Educ., 778 So.2d 888, 890-91 (Fla.2000); Advisory Op. to the Att'y Gen. re Term Limits Pledge, 718 So.2d 798, 801 (Fla.1998).
[5] See, e.g., Amendment to Bar Gov't From Treating People Differently Based on Race in Pub. Educ., 778 So.2d at 891.
[6] See In re Advisory Op. to the Att'y Gen. Save Our Everglades, 636 So.2d 1336, 1339 (Fla.1994) ("The single-subject limitation also guards against `logrolling,' a practice wherein several separate issues are rolled into a single initiative in order to aggregate votes or secure approval of an otherwise unpopular issue.").
[7] See id.
[8] See Fine v. Firestone, 448 So.2d 984, 990 (Fla.1984) ("[T]he one-subject limitation deal[s] with a logical and natural oneness of purpose.").
[9] See §§ 397.12, 397.334(c)-(d), 948.08, Fla. Stat. (2000).
[10] See also Advisory Op. to Att'y Gen. re Ltd. Casinos, 644 So.2d 71, 74 (Fla.1994) ("[W]e have held that the ballot information need not explain every detail or ramification of the proposed amendment.").
[11] See Save Our Everglades, 636 So.2d at 1341.