PER CURIAM.
The Attorney General has requested this Court to review a proposed amendment to the Florida Constitution. We have jurisdiction. See art. IV, § 10; art. V, § 8(b)(10), Fla. Const.
I. FACTS
Floridians for All PAC, a political committee registered pursuant to section 106.03, Florida Statutes (2003), has invoked the petition process of article XI, section 3, Florida Constitution, to propose a constitutional amendment through citizen initiative. The amendment would increase the minimum wage by $1 six months after its enactment and would increase the minimum wage each year thereafter according to the rate of inflation.
The ballot title for the proposed amendment is “A new section for Article X. is created Florida Minimum Wage Amendment.” The summary for the proposed amendment states:
This amendment creates a Florida minimum wage covering all employees in the state covered by the federal minimum wage. The state minimum wage will start as $6.15 per hour six months after enactment, and thereafter be indexed to inflation each year. It provides for enforcement, including double damages for unpaid wages, attorney’s fees, and fines by the state. It forbids retaliation against employees for exercising this right.
The full text of the proposed minimum wage amendment reads as follows:
(a) Public Policy. All working Floridians are entitled to be paid a minimum wage that is sufficient to provide a decent and healthy life for them and their families, that protects their employers from unfair low-wage competition, and that does not force them to rely on taxpayer-funded public services in order to avoid economic hardship.
(b) Definitions. As used in this amendment, the terms “Employer,” “Employee” and “Wage” shall have the meanings established under the federal Fair Labor Standards Act (FLSA) and its implementing regulations.
(c) Minimum Wage. Employers shall pay Employees Wages no less than the Minimum Wage for all hours worked in Florida. Six months after enactment, the Minimum Wage shall be established at an hourly rate of $6.15. On September 30th of that year and on each following September 30th, the state Agency for Workforce Innovation shall calculate an adjusted Minimum Wage rate by increasing the current Minimum Wage rate by the rate of inflation during the twelve months prior to each September 1st using the consumer price index for urban wage earners and clerical workers, CPI-W, or a successor index as calculated by the United States Department of Labor. Each adjusted Minimum Wage rate calculated shall be published and take effect on the following January 1st. For tipped Employees meeting eligibility requirements for the tip credit under the FLSA, Employers may credit towards satisfaction of the Minimum Wage tips up to the amount of the allowable FLSA tip credit in 2003.
(d) Retaliation Prohibited. It shall be unlawful for an Employer or any other party to discriminate in any manner or take adverse action against any person in retaliation for exercising rights protected under this amendment. Rights protected under this amendment include, but are not limited to, the right to file a complaint or inform any person *638 about any party’s alleged noncompliance with this amendment, and the right to inform any person of his or her potential rights under this amendment and to assist him or her in asserting such rights.
(e) Enforcement. Persons aggrieved by a violation of this amendment may bring a civil action in a court of competent jurisdiction against an Employer or person violating this amendment and, upon prevailing, shall recover the full amount of any back wages unlawfully withheld plus the same amount as liquidated damages, and shall be awarded reasonable attorney’s fees and costs. In addition, they shall be entitled to such legal or equitable relief as may be appropriate to remedy the violation including, without limitation, reinstatement in employment and/or injunctive relief. Any Employer or other person found liable for willfully violating this amendment shall also be subject to a fine payable to the state in the amount of $1000.00 for each violation. The state attorney general or other official designated by the state legislature may also bring a civil action to enforce this amendment. Actions to enforce this amendment shall be subject to a statute of limitations of four years or, in the case of willful violations, five years. Such actions may be brought as a class action pursuant to Rule 1.220 of the Florida Rules of Civil Procedure.
(f) Additional Legislation, Implementation & Construction. Implementing legislation is not required in order to enforce this amendment. The state legislature may by statute establish additional remedies or fines for violations of this amendment, raise the applicable Minimum Wage rate, reduce the tip credit, or extend coverage of the Minimum Wage to employers or employees not covered by this amendment. The state legislature may by statute or the state Agency for Workforce Innovation may by regulation adopt any measures appropriate for the implementation of this amendment. This amendment provides for payment of a minimum wage and shall not be construed to preempt or otherwise limit the authority of the state legislature or any other public body to adopt or enforce any other law, regulation, requirement, policy or standard that provides for payment of higher or supplemental wages or benefits, or that extends such protections to employers or employees not covered by this amendment. It is intended that case law, administrative interpretations, and other guiding standards developed under the federal FLSA shall guide the construction of this amendment and any implementing statutes or regulations.
(g) Severability. If any part of this amendment, or the application of this amendment to any person or circumstance, is held invalid, the remainder of this amendment, including the application of such part to other persons or circumstances, shall not be affected by such a holding and shall continue in full force and effect. To this end, the parts of this amendment are severable.
The Secretary of State submitted the amendment to the Attorney General, pursuant to section 15.21(2), Florida Statutes (2003). Pursuant to section 16.061(1), Florida Statutes (2003), the Attorney General petitioned this Court for an advisory opinion as to whether the text of the proposed amendment complies with the single-subject requirement of article XI, section 3, Florida Constitution, and whether the ballot title and summary comply with the requirements of section 101.161, Florida Statutes (2003). Floridians for All PAC, the sponsor, filed a brief in favor of the amendment. The Florida Restaurant Association, Inc., and the Florida Retail *639 Federation, Inc., filed a joint brief in opposition.
II. THIS COURT’S INQUIRY
When the Court renders an advisory opinion concerning a proposed constitutional amendment arising through the citizen initiative process, there is no ruling from a lower tribunal for the Court to review. Accordingly, no conventional standard of review is applicable. Instead, the Court limits its inquiry to two issues: (1) whether the amendment violates the single-subject requirement of article XI, section 3, Florida Constitution; and (2) whether the ballot title and summary violate the requirements of section 101.161(1), Florida Statutes (2003). See, e.g., Advisory Op. to Att’y Gen. re Amendment to Bar Gov’t From Treating People Differently Based on Race in Pub. Educ., 778 So.2d 888, 890-91 (Fla.2000); Advisory Op. to Att’y Gen. re Term Limits Pledge, 718 So.2d 798, 801 (Fla.1998). In addressing these two issues, the Court’s inquiry is governed by several general principles. First, the Court will not address the merits or wisdom of the proposed amendment. See, e.g., Amendment to Bar Gov’t From Treating People Differently Based on Race in Pub. Educ., 778 So.2d at 891. And second, “[t]he Court must act with extreme care, caution, and restraint before it removes a constitutional amendment from the vote of the people.” Askew v. Firestone, 421 So.2d 151, 156 (Fla.1982). Specifically, where citizen initiatives are concerned, “[the] Court has no authority to inject itself in the process, unless the laws governing the process have been ‘clearly and conclusively’ violated.” Advisory Op. to Att’y Gen. re Right to Treatment & Rehab, for Non-Violent Drug Offenses, 818 So.2d 491, 498-99 (Fla.2002); see also Amendment to Bar Gov’t From Treating People Differently Based on Race in Pub. Educ., 778 So.2d at 891 (“In order for the Court to invalidate a proposed amendment, the record must show that the proposal is clearly and conclusively defective....”).
III. THE SINGLE-SUBJECT RULE
Article XI, section 3, Florida Constitution, sets forth the requirements for a proposed constitutional amendment arising via the citizen initiative process. This section contains the single-subject rule:
SECTION 3. Initiative. — The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people, provided that, any such revision or amendment, except for those limiting the power of government to raise revenue, shall embrace but one subject and matter directly connected therewith.
Art. XI, § 3, Fla. Const. (emphasis added). The single-subject requirement is a “rule of restraint” that was “placed in the constitution by the people to allow the citizens, by initiative petition, to propose and vote on singular changes in the functions of our governmental structure.” Advisory Op. to Att’y Gen. re Prohibiting Public Funding of Political Candidates’ Campaigns, 693 So.2d 972, 975 (Fla.1997) (quoting Fine v. Firestone, 448 So.2d 984, 988 (Fla.1984)). Specifically, the single-subject rule prevents an amendment from engaging in either of two practices: (a) logrolling; or (b) substantially altering or performing the functions of multiple branches of state government.
A. Logrolling
The single-subject rule prevents logrolling, “a practice wherein several separate issues are rolled into a single initiative in order to aggregate votes or secure approval of an otherwise unpopular issue.” In re Advisory Op. to Att’y Gen.—Save Our Everglades, 636 So.2d 1336, 1339 (Fla.1994); *640 see also Advisory Op. to Att’y Gen. re Limited Casinos, 644 So.2d 71, 73 (Fla.1994) (“A primary reason for the single-subject restriction is to prevent ‘logrolling,’ a practice whereby an amendment is proposed which contains unrelated provisions, some of which electors might wish to support, in order to get an otherwise disfavored provision passed.”); Fine, 448 So.2d at 993 (“The purpose of the single-subject requirement is to ... avoid voters having to accept part of a proposal which they oppose in order to obtain a change which they support.”). In addressing this issue, the Court utilizes a “oneness of purpose” standard. See Fine, 448 So.2d at 990 (“[T]he one-subject limitation deal[s] with a logical and natural oneness of purpose.”). A proposed amendment meets this test when it “may be logically viewed as having a natural relation and connection as component parts or aspects of a single dominant plan or scheme. Unity of object and plan is the universal test....” Id. (quoting City of Coral Gables v. Gray, 154 Fla. 881, 19 So.2d 318, 320 (1944)).
In the present case, the opponents assert that the amendment attempts to bundle two discrete issues: (1) a one-time $1 increase in minimum wage; and (2) indexing the minimum wage to inflation. We disagree. The proposed amendment embraces one unified purpose, creating a state minimum wage that will keep up with inflation. This Court has held other similar provisions were directly connected to each other as aspects of a single plan. See, e.g., In re Advisory Opinion to Att’y Gen., Limitation of Non-Economic Damages in Civil Actions, 520 So.2d 284, 287 (Fla.1988) (holding an initiative petition did not violate the single subject rule where the proposed amendment set a cap on non-economic damages and provided a method to adjust the cap in order to meet changes in economic conditions so as to maintain the comparable value of the cap over time). Accordingly, the amendment does not violate the single-subject rule by engaging in impermissible logrolling.
B. Altering or Performing the Functions of Multiple Branches of Government
The single-subject rule also prevents “a single amendment from substantially altering or performing the functions of multiple branches of government and thereby causing multiple ‘precipitous’ and ‘cataclysmic’ changes in state government.” Right to Treatment & Rehab, for Nom-Violent Drug Offenses, 818 So.2d at 495. In this case, the sponsor contends that the proposed amendment does not alter or perform the functions of multiple branches of government, and no party opposes this assertion. We agree. Although this Court has recognized that virtually every amendment will have some effect on multiple branches of government,[1] the current proposed amendment in no way causes multiple cataclysmic changes so as to violate the constitutional constraints. Accordingly, the proposed amendment satisfies the single-subject requirement of article XI, section 3, of the Florida Constitution.
IV. BALLOT TITLE AND SUMMARY
Section 101.161, Florida Statutes (2003), sets forth the requirements for the ballot title and summary of a proposed constitutional amendment and provides in relevant part:
[T]he substance of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure- The ballot title shall con *641 sist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.
§ 101.161(1), Fla. Stat. (2003). The basic purpose of this provision is “to provide fair notice of the content of the proposed amendment so that the voter will not be misled as to its purpose, and can cast an intelligent and informed ballot.” Advisory Op. to Att’y Gen.—Fee On Everglades Sugar Prod., 681 So.2d 1124, 1127 (Fla. 1996).
The Court in In re Advisory Opinion to the Attorney General-Save Our Everglades, 636 So.2d 1336 (Fla.1994), explained further:
“[Sjection 101.161 requires that the ballot title and summary for a proposed constitutional amendment state in clear and unambiguous language - the chief purpose of the measure.” Askew v. Firestone, 421 So.2d 151, 154-55 (Fla.1982). This is so that the voter will have notice of the issue contained in the amendment, will not be misled as to its purpose, and can cast an intelligent and informed ballot. Id. at 155. However, “[i]t is not necessary to explain every ramification of a proposed amendment, only the chief purpose.” Carroll v. Firestone, 497 So.2d 1204, 1206 (Fla.1986).
Save Our Everglades, 636 So.2d at 1341; see also Ltd. Casinos, 644 So.2d at 74. Specifically, in conducting its inquiry into the validity of a proposed amendment under section 101.161(1), the Court asks two questions. First, the Court asks whether “the ballot title and summary ... fairly inform the voter of the chief purpose of the amendment.” Bight to Treatment & Rehab. for Non-Violent Drug Offenses, 818 So.2d at 497. And second, the Court asks “whether the language of the title and summary, as written, misleads the public.” Advisory Op. to Att’y Gen. re Right of Citizens to Choose Health Care Providers, 705 So.2d 563, 566 (Fla.1998).
In the current case, the opponents argue that the proposed amendment must fail this test on several bases. First, the opponents contend that the summary is misleading because it states that the state minimum wage will apply to the same people covered under federal law while the amendment itself will apply much more broadly. According to the opponents, the amendment adopts the very broad definition of “employee” found in section 203 of the Fair Labor Standards Act (“FLSA”),[2] but it fails to adopt the exemptions, and thus would allegedly extend the minimum wage beyond those covered under the federal minimum wage laws. We disagree. We conclude that the summary accurately describes 'that the proposed minimum wage amendment would apply to the same employees as covered by the federal minimum wage.
Specifically, the opponents contend that the amendment adopts only the definition of “employee” found in section 203(e)[3] since section (b) of the proposed amendment provides, “As used in this amendment, the terms ‘employer,’ ‘employee,’ and ‘wage’ shall have the meanings established under the federal Fair Labor Standards Act (FLSA) and its implementing regulations.” We reject this argument.
As an initial matter, it is important to point out that the proposed amendment does not make a specific reference to section 203, but instead incorporates a reference to the entire body of law under the FLSA. Moreover, the proposed amendment does not state that it is adopting the FLSA’s definition of the term “employee,” but provides that it is adopting the mean *642 ing of the term “employee,” which is a much broader concept. Compare The American Heritage Dictionary 775 (2d ed.1985) (defining “meaning” as “something that is interpreted to be the goal, intent, or end”) with The American Heritage Dictionary 375 (2d ed.1985) (defining “definition” as “the act of stating a precise meaning or significance”). Thus, the amendment includes both the definition of employee, found in section 203 of the FLSA, the exemptions found in section 213 of the FLSA, and any other relevant provision within the FLSA or its implementing regulations. In further support of this construction, section (f) of the proposed amendment clearly states, “It is intended that case law, administrative interpretations, and other guiding standards developed under the federal FLSA shall guide the construction of this amendment and any implementing statutes or regulations.” (Emphasis added.) Accordingly, we find the summary accurately reflects the scope of the amendment because both the summary and the amendment clearly state that employees covered under federal minimum wage will be the same employees covered under the state minimum wage.
Next, the opponents contend that the ballot summary is also deceptive because it states that the new Florida minimum wage law will be indexed to inflation each year, thus indicating that when inflation is positive (i.e., price of consumer goods and services increases), the minimum wage will increase, and when inflation is negative, the minimum wage will decrease. We disagree.
The amendment clearly does not provide for decreases in the minimum wage in times of deflation, nor does the summary create this impression. Specifically, the summary states: “The state minimum wage will start as $6.15 per hour six months after enactment, and thereafter be indexed to inflation each year.” (Emphasis added.) The plain meaning of “inflation,” however, refers only to the “continuing rise in the general price level.” See Merriam Webster’s Collegiate Dictionary 599 (10th ed.1993) (defining “inflation” as “an increase in the volume of money and credit relative to available goods and services resulting in a continuing rise in the general price level”). Accordingly, we do not believe that the summary is inaccurate or misleading in this regard.
Finally, the opponents contend that the summary does not properly inform the voters as to all of the effects of the proposed amendment because (1) it fails to inform the voters that the tip credit will be frozen at the current rate, thus benefitting wait staff disproportionately to other minimum wage employees; and (2) it fails to inform the voters that the new Florida minimum wage will incorporate a voluminous body of federal law. In this case, the ballot summary describes a very lengthy proposed amendment that sets the state minimum wage to $6.15 per hour, indexes this starting wage to inflation, provides for enforcement of the provision, and forbids retaliation against employees for exercising this right. Moreover, the summary also references the federal minimum wage law, providing that employees covered under the federal minimum wage will be covered by the state minimum wage law. As this Court has recognized, the summary does not need to “explain every ramification of a proposed amendment, only the chief purpose.” Save Our Everglades, 636 So.2d at 1341 (quoting Carroll v. Firestone, 497 So.2d 1204, 1206 (Fla.1986)). The summary clearly explains the chief purpose of this amendment.
Our review of the ballot title and summary shows that they meet the statutory word limit restrictions, they fairly inform the voter of the chief purpose of the *643 amendment, and they do not mislead the public. Therefore, the ballot title and summary comply with section 101.161(1).
V. CONCLUSION
Based on the foregoing, we hold that the present initiative petition comports with the single-subject requirement of article XI, section 3, Florida Constitution, and that the ballot title and summary comport with the requirements of section 101.161(1), Florida Statutes (2003). Accordingly, we approve the placement of this proposed amendment on the ballot. We caution, however, that our opinion today is limited to the above issues and must not be construed in any way as a ruling on the underlying merits or wisdom of the amendment. No motions for rehearing will be entertained.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, and BELL, JJ., concur.
CANTERO, J., dissents with an opinion.

. See Ltd. Casinos, 644 So.2d at 74.

. See 29 U.S.C. § 203(e) (2000).

. 29 U.S.C. § 203(e) (2000).