CANADY, J.,
dissenting.
I concur in the majority’s conclusions that the proposed amendment does not violate the single-subject requirement, that the ballot title is not defective, and that the financial impact statement complies with the statutory requirements. I dissent, however, from the conclusion that the ballot summary is misleading and from the decision to exclude the proposed amendment from the ballot.
As the majority acknowledges, this Court has long recognized that we should not “interfere with the right of the people to vote upon a proposed constitutional amendment absent a showing in the record that the proposal is ‘clearly and conclusively defective.’ ” Weber v. Smathers, 338 So.2d 819, 821 (Fla.1976) (quoting Goldner v. Adams, 167 So.2d 575 (Fla.1964)). As the majority also acknowledges, “[t]he Court must act with extreme care, caution, and restraint before it removes a constitutional amendment from the vote of the people.” Askew v. Firestone, 421 So.2d 151, 156 (Fla.1982). This highly deferential standard of review and this cautionary injunction should not be treated as empty shibboleths.
Under the clearly-and-conclusively-defective standard of review, there is no basis for concluding that the ballot summary for the proposed amendment is defective. The summary neither fails to “fairly inform the voter of the chief purpose of the amendment” nor “misleads the public” concerning the amendment. Advisory Op. to Att’y. Gen. re Additional Homestead Tax Exemption, 880 So.2d 646, 651 (Fla.2004). For the reasons I will explain, none of the grounds relied upon by the majority are persuasive.
The first basis on which the majority concludes that the summary is defective relates to this language in the summary: “except property taxes approved by voters.” The majority concludes that this portion of the summary is misleading because it “fails to point out that any property taxes approved by voters cannot extend for longer than two years” and because it “does not refer at all to article VII, section *978 12 [or] tell the voter that voter approval is not required for all taxes levied for the payment of bonds under article VII, section 12(b).” Majority op. at 975. This conclusion does not withstand analysis.
“The seventy-five word limit placed on the ballot summary as required by statute does not lend itself to an explanation of all of a proposed amendment’s details.” Advisory Op. to Att’y Gen. re Limited Casinos, 644 So.2d 71, 75 (Fla.1994). It is the very nature of a summary that it will not include all of the details of what is being summarized. The details identified by the majority are the very type of details that a summary cannot reasonably be expected to set forth. Here, explaining these ancillary details would expand the summary beyond the seventy-five-word limitation.
The two-year limitation on voter-approved levies exceeding the 1.35% cap is a minor provision within the proposal. A reasonable voter would understand that the approval given for “property taxes approved by voters” would not necessarily be an approval of those taxes in perpetuity. There is nothing misleading about the omission of this detail. See Advisory Op. to Att’y Gen. re Med. Liab. Claimant’s Comp. Amendment, 880 So.2d 675, 679 (Fla.2004) (“We also note that it is not necessary for the title and summary to explain every detail or ramification of the proposed amendment.”).
I cannot accept the notion that the failure to make a specific reference to article VII, section 12 — which contains provisions relating to local bonds payable from ad valorem taxation — is of any significance. To how many voters would such a reference have any meaning? The material fact is that an ad valorem tax burden arises under article VII, section 12, only by voter approval. The summary is in no way misleading on this point.
The majority’s concern about the provision of article VII, section 12(b), relating to refunding bonds is also unwarranted. The fact is that such bonds may be issued only to refund outstanding bonds “at a lower net average interest cost rate.” Art. VII, § 12(b), Fla. Const. The issuance of such refunding bonds can only result in a lowering of the burden borne by ad valo-rem taxpayers for obligations that the voters themselves previously approved. This is the sort of detail that could have no conceivable effect on a voter’s decision concerning how to vote on the proposed amendment. The omission of this detail and the other details identified by the majority by no stretch of the imagination renders the summary clearly and conclusively defective.
Next, the majority focuses on the statement in the summary that “[djistribution of revenue from parcels that have reached the 1.35% limit shall be determined by general law.” (Emphasis added.) The majority contends that this statement is inconsistent with the text of the proposed amendment which refers to “the distribution of tax revenues derived from parcels for which combined ad valorem tax levies exceed 1.35% of the parcel’s highest taxable value.” (Emphasis added.) There is, however, no inconsistency.
This portion of the summary and the corresponding provisions of the proposed amendment address the fact that some parcels of property are subject to aggregate tax assessments that exceed 1.35% of the value of the parcels and that some method must be employed for adjusting the distribution of the reduced revenues from these parcels — 'the consequence of the 1.35% tax cap — among the various taxing entities. The reference in the summary to the “[djistribution of revenue from parcels that have reached the 1.35% limit” can only reasonably be understood as de *979 scribing the distribution of revenue from parcels that have been subjected to the operation of the 1.35% property tax cap mentioned in the ballot title. The summary, of course, also states that the proposed amendment “[pjrovides that the property tax on any parcel of real property shall never exceed 1.35% of the highest taxable value of the property.” The reference in the summary to “[distribution of revenue from parcels that have reached the 1.35% limit” must be understood in the context of the preceding statements in the title and summary. When the reference is understood in that context, it is unreasonable to believe that a voter could be misled by the challenged language of the summary.
The majority’s contention that the challenged portion of the summary “implies that the Legislature is being authorized to distribute tax revenues above 1.35%” is based on a forced and unreasonable reading of the summary and title. Majority op. at 975 (emphasis added). The text of the summary makes no reference to tax revenues above 1.35% or tax revenues that have reached 1.35%. Instead, the text of the summary refers to “parcels that have reached the 1.35% limit.” The summary informs the voters that “revenue from [those] parcels” will be distributed as “determined by general law.” Nothing in the structure of the particular sentence of the summary or in the broader context of the complete summary justifies the implied meaning on which the majority relies. Indeed, the literal meaning and the context both make that implied meaning untenable.[4]
Finally, the majority concludes that the summary is defective because it fails to inform the voters of the repeal of article VII, section 9(b), which establishes millage limitations for the various taxing entities. In support of this conclusion, the majority relies on a statement from Fine v. Firestone, 448 So.2d 984, 989 (Fla.1984), that “an initiative proposal should identify the articles or sections of the constitution substantially affected.” In Fine, the court ruled that the proposed amendment at issue violated the single-subject requirement. No challenge to the ballot summary was presented. The statement relied on by the majority here referred not to the content of the ballot summary but to the content of the proposed amendment itself. Being unconnected to the Court’s holding in Fine that the “proposal contains at least three subjects,” the statement is purely dicta. Id. at 992. Similarly, the statement cited by the majority from Advisory Op. to Att’y Gen. re Tax Limitation, 644 So.2d 486, 490 n. 1 (Fla.1994), is dicta.
A ballot summary should not be held clearly and conclusively defective merely because it does not describe an existing provision of the Constitution that will be affected by the proposed amendment. Imposing such a requirement to educate the voters about the constitutional status quo would unduly burden the initiative process. We have recognized that “[t]he voter must be presumed to have a certain amount of common sense and knowledge.” Advisory Op. to Att’y Gen. re Tax Limitation, 673 So.2d 864, 868 (Fla.1996). We have also stated:
Under our system of free elections, the voter must acquaint himself with the details of a proposed [ballot measure] *980 together with the pros and cons thereon before he enters the voting booth. If he does not, it is no function of the ballot question to provide him with that needed education.
Advisory Op. to Att’y Gen. re Right to Treatment & Rehabilitation, 818 So.2d 491, 498 (Fla.2002) (quoting Metropolitan Dade County v. Shiver, 365 So.2d 210, 213 (Fla. 3d DCA 1978)). Any reasonably informed voter would understand that the proposed amendment to cap ad valorem taxes would make a substantial change in the constitutional status quo with respect to ad valorem taxes. We should not require that a ballot summary state the obvious. It cannot reasonably be asserted that the summary conceals anything from the voters.
In connection with this point, the majority places particular emphasis on the absence of the terms “mill” and “millage” from the ballot summary. From the absence of those words, the majority apparently believes that the voters will not understand that their tax millage would be affected by the adoption of the proposed amendment. This is not plausible. Surely, any person who understands what the terms “mill” and “millage” mean would understand that the 1.35% property tax cap is equivalent to a property tax cap of 13.5 mills. The use of the technical terms “mill” and “millage” would do absolutely nothing to enhance voter understanding.
In summary, none of the “defects” relied on by the majority are in fact defects. First, the majority challenges nothing more than the absence of ancillary details. Second, the majority reads an implication into the summary without any warrant for doing so. Third, the majority finds fault with the summary’s failure to state the obvious.
“Sovereignty resides in the people and the electors have a right to approve or reject a proposed amendment to the organic law of the State, limited only by those instances where there is an entire failure to comply with a plain and essential requirement of [the law].” Pope v. Gray, 104 So.2d 841, 842 (Fla.1958). “The right of Floridians to decide whether to accept or reject a change of their own making in their oum organic law is paramount.” Treatment & Rehabilitation, 818 So.2d at 498.
Because there is no defect in the ballot summary — much less a defect that is clearly and conclusively established — I dissent from the majority’s decision to prevent the people of Florida from voting on this proposed amendment to their Constitution.
POLSTON, J., concurs.

. It may be that the majority’s reading arises from treating the phrase "from parcels” essentially as a parenthetical so that the sentence reads: "Distribution of revenue (from parcels) that have reached the 1.35% limit shall be determined by general law.” Aside from the fact that everything in the context precludes such a reading, there is another problem: the reading is ungrammatical, as is quite obvious.