682 So.2d 198 (1996)
MIAMI HEAT LIMITED PARTNERSHIP, a Florida limited partnership, Basketball Properties, Ltd., a Florida limited partnership, and Pauline Winick, Appellants,
v.
David C. LEAHY, as Supervisor of Elections of Metropolitan Dade County, Florida, Appellee, and
Stop New Arena Committee, Intervenor.
Nos. 96-2803, 96-2804.
District Court of Appeal of Florida, Third District.
October 24, 1996.
*199 Bruce S. Rogow, Fort Lauderdale; Holland & Knight and Daniel S. Pearson, Miami, for appellants.
Robert A. Ginsburg, County Attorney, and Steven B. Bass and Jess M. McCarty, Assistant County Attorneys, for appellee.
Jorden, Burt, Berenson & Johnson and Dan Paul; Baker & McKenzie and Richard J. Ovelmen; Zack, Sparber, Kosnitzky, Spratt & Brooks, Miami, for intervenor.
*200 Before SCHWARTZ, C.J., and NESBITT and SHEVIN, JJ.
NESBITT, Judge.
On September 25, 1996, Miami Heat Limited Partnership, Basketball Properties, Ltd., and Pauline Winick (hereinafter "appellants") brought an action for declaratory judgment and filed an emergency motion for permanent injunction to prohibit David H. Leahy, as Supervisor of Elections, from placing a ballot question prompted by an Initiative Petition on the upcoming November 5, 1996 general election ballot.[1] The trial court held a hearing on appellants' motion for injunction on October 4, 1996. As a result of that hearing the trial court entered the order now sought to be reviewed. In it, the court decided to allow the election to proceed with the disputed question on the ballot while at the same time reserve ruling on "the legality of the ballot question."

I.
Appellants seek alternative remedies in this court. In Case No. 96-2804 appellants have filed a petition for a writ of mandamus in which they seek to force the trial court to rule on their request for injunctive relief prior to the election. In Case No. 96-2803, appellants have filed a notice of appeal under Florida Rule of Appellate Procedure 9.130(a)(3)(B) arguing that the trial court's order is an effective, though not express, denial of their request for injunctive relief. Thus, our first task is to decide the question of our jurisdiction.
The order sought to be reviewed provides in pertinent part as follows:
1. Without ruling on the legality of the ballot question at this time, the Court will permit the election to proceed with the instant question on the ballot.
2. The Court will review all of the arguments of the parties and the case law to make an ultimate ruling as to its legality. A ruling will be published subsequent to the election.
Rule 9.130(a)(3)(B) of the Florida Rules of Appellate Procedure provides:
(a) Applicability.
(3) Review of non-final orders of lower tribunals is limited to those that
(B) grant, continue, modify, deny, or dissolve injunctions, or refuse to modify or dissolve injunctions....
Clearly, the order in question does not by its terms "deny" an injunction. In support of their argument that we may treat the order as an appealable nonfinal order, the appellants have cited to analogous federal authority.
Codified in a federal statute, the relevant provision allowing for appeal of an order denying an injunction provides as follows:
§ 1292. Interlocutory decisions
(a) Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:
(1) Interlocutory orders of the district courts of the United States, ... or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court.
28 U.S.C.S. § 1292(a)(1) (Law.Co-op.1996). This court has previously held that where, as here, state rules are "closely patterned" on their federal counterparts, decisions and commentaries interpreting the federal rules are persuasive in construing the state rules.[2] *201 Dinter v. Brewer, 420 So.2d 932, 934 n. 2 (Fla. 3d DCA 1982)(citing Gross v. Franklin, 387 So.2d 1046, 1048 n. 6 (Fla. 3d DCA 1980)).
Reviewing the relevant decisions, one jurist has succinctly noted:
Federal courts have interpreted [28 U.S.C.S. § 1292(a)(1)] to mean that if an interlocutory order expressly grants or denies a request for injunctive relief, the losing party has a right to direct appeal, but that if the interlocutory order does not do so, the losing party only has the right to direct appeal if the litigant can show that the interlocutory order has the practical effect of granting or denying an injunction; that the interlocutory order might have serious, perhaps irreparable, consequences; and that the order can be effectively challenged only by immediate appeal.
Georgia Power Co. v. Hunt, 266 Ga. 331, 466 S.E.2d 846, 849 (1996)(Sears, J., concurring specially)(citing federal appellate decisions so holding).
Applying that test we conclude that the order in question is an appealable nonfinal order.[3] It has the practical effect of denying appellants' request for injunctive relief, as the disputed question will go on the ballot. The consequences of the order are irreparable as, if appellants contentions are taken as true, a misleading ballot question in violation of county and state law will appear on the general election ballot. Finally, the order can only be challenged by immediate appeal given the impending general election.

II.
Turning to the merits, we review the trial court's order effectively denying an injunction for an abuse of discretion. Moreover, we note that "[t]he law is well-settled that a court of equity as a general rule will not restrain the holding of an election because a free election in a democracy is a political matter to be determined by the electorate and not the courts." Metropolitan Dade County v. Shiver, 365 So.2d 210, 212 (Fla. 3d DCA 1978), affirmed, 394 So.2d 981 (Fla.1981).
Appellants' first argument is that the initiative petition[4] that prompted the ballot *202 question violates section 12-12 of the Dade County Code. That section declares: "Initiative petitions proposed pursuant to Sections 7.01 or 8.07 of the Dade County Home Rule Charter shall embrace but one subject and matter directly connected therewith." Intervenor responds that the Home Rule Charter provides the sole procedure and qualifications an initiative petition must meet for submittal to the electorate; thus, section 12-12 is invalid and no single-subject requirement is applicable.
We agree with the intervenor that the Home Rule Charter provides the only method for initiating referenda on ordinances and does not impose a single subject requirement. Article VIII, section 11(1)(i) of the 1885 Florida Constitution, carried forward by Article VIII, section 6(e) of the 1968 Florida Constitution, states that the Home Rule Charter "[s]hall provide a method for ... initiative and referendum, including the initiation of and referendum on ordinances...." Section 7.01 of the Charter carries out the constitutional directive and lays out a "procedure" for Dade County electors to initiate passage of or referenda on ordinances. Nowhere in that procedure is there a requirement that initiative petitions embrace only a single subject.
A near perfect analogy to this case exists in Citizens Proposition for Tax Relief v. Firestone, 386 So.2d 561 (Fla.1980). There the appellant citizens group was attempting to place a constitutional amendment on the ballot by initiative under Article XI, section 3 of the Florida Constitution. An existing statute and administrative rule imposed certain requirements on an initiative's sponsor before the proposal would be placed on the ballot. Among these were verification procedures for the signatures found on the petition and a requirement that initiative petitions be filed with the secretary of state 122 days preceding the next general election rather than the ninety days required in Article XI, section 5, Florida Constitution.
In passing on the validity of these executive and legislative enactments, the court noted:
This is a self-executing constitutional provision. It clearly establishes a right to propose by initiative petition a constitutional amendment which may be implemented without the aid of any legislative enactment. Gray v. Bryant, 125 So.2d 846 (Fla.1960).... In considering any legislative act or administrative rule which concerns the initiative amending process, we must be careful that the legislative statute or implementing rule is necessary for ballot integrity since any restriction on the initiative process would strengthen the authority and power of the legislature and weaken the power of the initiative process. The delicate symmetric balance of this constitutional scheme must be maintained, and any legislative act regulating the process should be allowed only when necessary to ensure ballot integrity. We do, however, recognize that the legislature, in its legislative capacity, and the secretary of state, in his executive capacity, have the duty and obligation to ensure ballot integrity and a valid election process. Ballot integrity is necessary to ensure the effectiveness of the constitutionally provided initiative process.
Id. at 566-67 (emphasis added).
In the instant case, section 7.01 of the Charter is a self-executing provision. It clearly establishes the right to propose by initiative petition the passage or repeal of ordinances without the aid of any legislative enactment. We conclude that section 12-12 of the Code is not "necessary to ensure ballot integrity" and that such a restriction on the initiative process would strengthen the authority and power of the County Commission but weaken the power of the initiative process. See id.
In Abreau v. Cobb, 670 So.2d 1010 (Fla. 3d DCA 1996), cause dismissed, Case No. 88,081 (Fla. Dec. 11, 1996), a recall petition was challenged on the basis that it did not state grounds for removal in violation of section 100.361(1)(b), Florida Statutes (1995). This court held: "The Charter sets forth the petition form, which does not require a recall petition to state the grounds for removal. *203 Thus, pursuant to the [Home Rule Constitutional Amendment], the petition is not required to comply with the statute and the Charter is supreme." Id. at 1012. This court further held that "requiring compliance with the statute would constitute an unlawful amendment of the Charter." Id.
If a recall petition was not required to comply with a state statute in that case, an initiative petition is certainly not required to comply with an ordinance in this one. If the Charter was supreme in that instance, it is no less supreme vis-a-vis an ordinance. Additionally, as with the statute in Abreau, compliance with this ordinance would unlawfully amend the Charter procedure for initiating referenda on ordinances.[5] If the Board of County Commissioners, or anyone else, wishes to impose a single subject requirement on initiative petitions, they must do so by amendment to the Charter itself. Until such time, the right of Dade County citizens to propose ordinances by way of petition that embrace more than one subject may not be restricted by the Commission's enactment of an ordinance attempting to impose such a requirement.
Appellants' second, and final, argument is that the language of the ballot question[6] approved by the County Commission for placement on the general election ballot is violative of section 7.01 of the Home Rule Charter and section 101.161, Florida Statutes (1995). See, e.g., Kobrin v. Leahy, 528 So.2d 392 (Fla. 3d DCA), rev. denied, 523 So.2d 577 (Fla.1988); Metropolitan Dade County v. Lehtinen, 528 So.2d 394 (Fla. 3d DCA), rev. denied, 528 So.2d 1182 (Fla.1988). Section 7.01(4) of the Charter provides that a proposal submitted to the electors must be "in such a manner as provides a clear understanding of the proposal." Likewise, section 101.161 requires "that a ballot question set forth the substance of ... [the] public measure ... in clear and unambiguous language ... [which contains] the chief purpose of the measure...." Kobrin, 528 So.2d at 393 (quoting subsection 101.161(1), Florida Statutes (1987)).
Appellants' main contention is that the ballot question does not adequately inform the voters of the effect the proposed ordinance would have on the expansion and operation of the Maritime Park Port Project. We disagree. The text of the ballot question clearly states that any construction in Bicentennial Park or the FEC Tract that obstructs or impairs the public's view of Biscayne Bay is prohibited unless prior voter approval is obtained. Judge Hubbart's comments in a different context are particularly apt:
It is true ... that certain of the details of the ordinance as well as some of its ramifications were either omitted from the ballot question or could have been better explained therein. That, however, is not the test. There is no requirement that the referendum question set forth the ordinance verbatim nor explain its complete terms at great and undue length. Such would hamper instead of aiding the intelligent exercise of the privilege of voting. Under our system of free elections, the voter must acquaint himself with the details of a proposed ordinance on a referendum together with the pros and cons thereon before he enters the voting booth. If he does not, it is no function of the ballot question to provide him with that needed education. What the law very simply requires is that the ballot give the voter fair notice of the question he must decide so that he may intelligently cast his vote. That requirement has been more than adequately met in this case.
Shiver, 365 So.2d at 213 (footnote omitted).
In sum, we affirm the trial court's effective denial of the appellants' motion for permanent injunctive relief and we remand to the *204 trial court with directions to dismiss the complaint. The general election will proceed with the subject question on the ballot, to be decided by the electorate.
Affirmed with directions.
SHEVIN, J., concurs.
SCHWARTZ, Chief Judge (specially concurring).
I recognize the wisdom of the trial judge's determination to postpone ruling until after the election both because of a rightful reluctance "to interfere with the electoral process by precluding a decision of the voters," Wilson v. Dade County, 369 So.2d 1002, 1003 (Fla. 3d DCA 1979), cert. denied, 373 So.2d 457 (Fla.1979); see City of De Land v. Fearington, 108 Fla. 498, 146 So. 573 (1933); Dulaney v. City of Miami Beach, 96 So.2d 550 (Fla. 3d DCA 1957), and because the interests of judicial economy would be served by pretermitting determination of the legal issues involved if the proposal is defeated at the polls.[7]Nevertheless, I entirely agree with the conclusion that, under the circumstances, the "non-ruling" below amounted to a denial of the plaintiffs' application to enjoin the election so as to permit review of the order under Florida Rule of Appellate Procedure 9.130(a)(3)(B).
On the merits, I wholeheartedly concur in Judge Nesbitt's treatment of the issues of the language of the proposal and ballot question and the invalidity of section 12-12 of the Dade County Code.In my view, affirmance is also appropriate because, even assuming its applicability, the single subject rule is not violated by the proposal before us. To the contrary, it is clear that, fairly and common sensibly viewed, the initiative indeed deals with but a single subject: restricting development on specified public parkland on the Miami waterfront. See State v. Dade County, 39 So.2d 807 (Fla.1949); State v. Dade County, 39 So.2d 810 (Fla.1949). The appellants' primary argument otherwise, that the fact that the restrictions contained in section (1)(b) may be vitiated by a prior approval of "the public in an election" renders the "subject" of that subparagraph the allegedly different one of electoral power or "governance," strikes me as logic-chopping in its most extreme form. More important, it is contrary to the Florida law that provisions like (1)(b), concerning the manner in which a proposal is to be implemented, are only supplementary to the subject of the proposal and do not constitute an independent or separate subject of their own.[8]Advisory Opinion to Attorney Gen. re Limited Casinos, 644 So.2d 71 (Fla.1994); Floridians Against Casino Takeover v. Let's Help Florida, 363 So.2d 337, 339 (Fla.1978)(in determining whether a ballot question has a "[u]nity of object and plan ... it is to be looked for in the ultimate end sought, not in the details or steps leading to the end").
NOTES
[1] The trial court granted Stop New Arena Committee's (hereinafter "intervenor") motion for intervention on October 3, 1996.
[2] In discussing this provision, one well known authority made the following particularly pertinent comment:

[A] district court may not avoid immediate review of its determination simply by failing to characterize or label its decision as one denying or granting injunctive relief. For example, when a court declines to make a formal ruling on a motion for a preliminary injunction, but its action has the effect of denying the requested relief, its refusal to issue a specific order will be treated as equivalent to the denial of a preliminary injunction and will be appealable.
11 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2962, at 614 (West 1973)(quoted in Mitsubishi Int'l Corp. v. Cardinal Textile Sales, 14 F.3d 1507, 1515 (11th Cir.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1092, 130 L.Ed.2d 1061 (1995)).
[3] In light of this conclusion, we dismiss as moot appellants' petition for a writ of mandamus.
[4] The petition provides as follows:

Petition For Public's Right to Vote on Arena and Park Construction
ORDINANCE PROHIBITING COMMITTING, PLEDGING, OR USING COUNTY TAX FUNDS, LEASED LANDS, MONEYS OR BONDS FOR THE PURPOSE OF BUILDING IN BICENTENNIAL PARK OR THE FEC TRACT IN THE CITY OF MIAMI, FLORIDA A NEW ARENA AND/OR PARKING GARAGES; OR UNLESS FIRST APPROVED BY THE PUBLIC IN AN ELECTION ANY PERMANENT STRUCTURES WHICH OBSTRUCT OR IMPAIR THE PUBLIC'S ACCESS TO AND VIEW OF BISCAYNE BAY FROM BISCAYNE BOULEVARD OR WHICH ARE TO BE LEASED TO OR USED BY FOR PROFIT BUSINESS ENTITIES; PROVIDING SEVERABILITY; INCLUSION IN THE CODE, AND AN EFFECTIVE DATE.
BE IT ORDAINED BY THE PEOPLE OF DADE COUNTY, FLORIDA:
Section 1. No County tax funds or county leased lands, moneys or bonds shall be committed, pledged, or used to build in Bicentennial Park or the adjacent parklands known as the FEC Tract in the City of Miami:
(a) a new arena and/or parking garages, or
(b) unless first approved by the public in an election, any permanent structures which obstruct or impair the public's access to and view of Biscayne Bay from Biscayne Boulevard or which are to be leased to or used by for profit business entities.
Section 2. If any section, subsection, sentence, clause, phrase, words or provision of this ordinance is held invalid or unconstitutional, the remainder of this ordinance shall not be affected by such holding.
Section 3. This ordinance shall be liberally construed to prevent the use of public funds for the purposes set forth herein and to protect the public's unobstructed access to Biscayne Bay and to preserve the public's parklands for compatible outdoor recreational purposes.
Section 4. This ordinance shall be made a part of the Code of Metropolitan Dade County, Florida.
Section 5. This ordinance shall take effect on the day after the election approving this ordinance.
WE the undersigned electors of Dade County, Florida petition the Board of County Commissioners either to pass the foregoing ordinance or to submit this ordinance to the electors of Dade County, Florida in accordance with Article 7, Section 7.01 of the Charter of Metropolitan Dade County.
[5] We note that Abreau even more directly disposes of any argument that the single subject requirement found in section 125.67, Florida Statutes (1995), is applicable.
[6] It reads as follows:

Shall Dade County be prohibited from using County taxes, leased lands, moneys or bonds to construct a new arena and related facilities in Bicentennial Park or the FEC Tract, and also be prohibited, unless approved by the voters, from any construction in Bicentennial Park or the FEC Tract which obstructs or impairs the view of Biscayne Bay or which is leased or used by for profit business entities?
[7] There was thus ample "justification that the ruling be withheld" so that mandamus does not lie to compel a decision at this time. See Flagship National Bank v. Testa, 429 So.2d 69, 70 (Fla. 3d DCA 1983).
[8] Technically speaking, reliance on this ground for affirmance would obviate the need for ruling on the validity of the ordinance.