827 So.2d 959 (2002)
Jim SMITH, Secretary of State, etc., et al., Appellants,
v.
COALITION TO REDUCE CLASS SIZE and Pre-K Committee, etc., Appellees.
No. SC02-1624.
Supreme Court of Florida.
September 13, 2002.
*960 L. Clayton Roberts, General Counsel, and Heidi Hughes, Assistant General Counsel, Florida Department of State, Tallahassee, FL, for Appellants.
Mark Herron and Thomas M. Findley of Messer, Caparello & Self, P.A., Tallahassee, FL; and Laurie Mathews of Hunton & Williams, Miami, FL, for Appellees.
Charles T. Canady, General Counsel, Carlos G. Muniz, Deputy General Counsel, and Simone Marstiller, Assistant General Counsel, Tallahassee, FL, for Jeb Bush, Governor of the State of Florida, Amicus Curiae.
Benjamin H. Hill, III, Lynn C. Hearn, and Mark J. Criser of Hill, Ward & Henderson, P.A., Tampa, FL, for The Florida House of Representatives, Amicus Curiae.
HARDING, Senior Justice.
We have for review a trial court judgment certified by the district court of appeal to be of great public importance and to require immediate resolution by this Court. We have jurisdiction. See art. V, § 3(b)(5), Fla. Const. For the reasons expressed below, we affirm the trial court's judgment finding that the statutorily imposed fiscal impact statement is an unconstitutional imposition on the initiative process.[1]
This case concerns the constitutionality of chapter 2002-390, Laws of Florida, which requires the Department of State to include for all proposed revisions or amendments to the state constitution by initiative "an analysis and fiscal impact statement" prepared by the Revenue Estimating Conference, estimating the "increase or decrease in any revenues or costs to state or local governments resulting from [the adoption of] the proposed initiative." The law requires the statement to be "clear and unambiguous" and to not exceed fifty words. The fiscal impact statement would be separately contained and placed on the ballot after the ballot summary.
Two political committees that were formed to advocate the adoption of proposed amendments[2] sought a temporary *961 injunction enjoining the Secretary of State from placing the fiscal impact statements on the November 2002 ballot. The committees pointed out to the circuit court that this Court has already approved the ballot titles and summaries for both initiatives. See Advisory Opinion to the Attorney General re Voluntary Universal Pre-Kindergarten Education, 824 So.2d 161 (Fla.2002); Advisory Opinion to the Attorney General re Florida's Amendment to Reduce Class Size, 816 So.2d 580 (Fla. 2002). The circuit court below granted the injunction, finding the fiscal impact statement requirement facially unconstitutional because it violates article XI, sections 3 and 5 of the Florida Constitution. The circuit court also found the provision unconstitutional as applied to appellees and others who have already had their proposals approved by this Court for placement on the ballot, since it would abrogate vested rights in violation of the due process clauses of the state and federal constitutions. Therefore, the circuit court enjoined appellants from placing a fiscal impact statement for any initiative on the November ballot.
On appeal, the First District Court of Appeal concluded that the case was one requiring immediate resolution by this Court, pursuant to Rule of Appellate Procedure 9.125. See Harris v. Coalition to Reduce Class Size, 824 So.2d 245 (Fla. 1st DCA 2002). The district court noted that the ballots for the November 2002 election must be printed and mailed no later than September 21.
We begin our analysis by addressing the appropriate standard of review. In Operation Rescue v. Women's Health Center, 626 So.2d 664 (Fla.1993), this Court stated the following regarding an appellate court's standard of review of a trial court's grant of an injunction:
Where an injunction is issued and challenged, Florida's appellate courts possess express authority to review the order. Fla. R.App. P. 9.130(a)(3)(B). The scope of review, however, is limited. As a general rule, trial court orders are clothed with a presumption of correctness and will remain undisturbed unless the petitioning party can show reversible error. To the extent it rests on factual matters, an order imposing a permanent injunction lies within the sound discretion of the trial court and will be affirmed absent a showing of abuse of discretion. This is particularly true where the order relies on live testimony or other evidence that the trial court is singularly well-suited to evaluate. Abuse of discretion, of course, is judged by the general "reasonableness" standard:
In reviewing a true discretionary act, the appellate court must fully recognize the superior vantage point of the trial judge and should apply the "reasonableness" test to determine whether the trial judge abused his discretion. If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion. The discretionary ruling of the trial judge should be disturbed only when his decision fails to satisfy this test of reasonableness.

Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980). To the extent it rests on purely legal matters, an order imposing an injunction is subject to full, or de novo, review on appeal.
Id. at 670 (citations omitted).
The issue in this case is whether chapter 2002-390 violates the Florida Constitution. Article XI, section 3 of the Florida Constitution, entitled "Initiative," provides:
The power to propose the revision or amendment of any portion or portions of *962 this constitution by initiative is reserved to the people, provided that any such revision or amendment, except for those limiting the power of government to raise revenue, shall embrace but one subject and matter directly connected therewith. It may be invoked by filing with the secretary of state a petition containing a copy of the proposed revision or amendment, signed by a number of electors in each of one half of the congressional districts of the state, and of the state as a whole, equal to eight percent of the votes cast in each of such districts respectively and in the state as a whole in the last preceding election in which presidential electors were chosen.
Article XI, section 5, entitled "Amendment or Revision Election," provides:
(a) A proposed amendment to or revision of this constitution, or any part of it, shall be submitted to the electors at the next general election held more than ninety days after the joint resolution, initiative petition or report of revision commission, constitutional convention or taxation and budget reform commission proposing it is filed with the secretary of state, unless, pursuant to law enacted by the affirmative vote of three-fourths of the membership of each house of the legislature and limited to a single amendment or revision, it is submitted at an earlier special election held more than ninety days after such filing.
(b) Once in the tenth week, and once in the sixth week immediately preceding the week in which the election is held, the proposed amendment or revision, with notice of the date of election at which it will be submitted to the electors, shall be published in one newspaper of general circulation in each county in which a newspaper is published.
(c) If the proposed amendment or revision is approved by vote of the electors, it shall be effective as an amendment to or revision of the constitution of the state on the first Tuesday after the first Monday in January following the election, or on such other date as may be specified in the amendment or revision.
In State ex rel. Citizens Proposition for Tax Relief v. Firestone, 386 So.2d 561 (Fla.1980), this Court found that article XI, section 3 was a self-executing constitutional provision. Accordingly, this Court recognized that the Legislature only has limited authority to adopt regulations that affect the initiative process:
This is a self-executing constitutional provision. It clearly establishes a right to propose by initiative petition a constitutional amendment which may be implemented without the aid of any legislative enactment. Gray v. Bryant, 125 So.2d 846 (Fla.1960). In this regard, this initiative process has already produced a constitutional amendment which was adopted without the benefit of the subject statute or rule. Art. II, § 8 (Ethics in Government).
The four methods of amending our constitution must be considered as a whole to effect their overall purpose. Smathers v. Smith, 338 So.2d 825 (Fla. 1976). They are delicately balanced to reflect the power of the people to propose amendments through the initiative process and the power of the legislature to propose amendments by its legislative action without executive check. Only these two methods can produce constitutional amendment proposals at each general election. The power to propose amendments to the electorate by the constitution revision commission or a constitutional convention procedure is substantially restricted by their ability to exist. In considering any legislative act or administrative rule which concerns the initiative amending process, *963 we must be careful that the legislative statute or implementing rule is necessary for ballot integrity since any restriction on the initiative process would strengthen the authority and power of the legislature and weaken the power of the initiative process. The delicate symmetric balance of this constitutional scheme must be maintained, and any legislative act regulating the process should be allowed only when necessary to ensure ballot integrity. We do, however, recognize that the legislature, in its legislative capacity, and the secretary of state, in his executive capacity, have the duty and obligation to ensure ballot integrity and a valid election process. Ballot integrity is necessary to ensure the effectiveness of the constitutionally provided initiative process.
Id. at 566-67. In Tax Relief, the appellant citizens group was attempting to place a constitutional amendment on the ballot by initiative pursuant to article XI, section 3. An existing statute and administrative rule imposed certain requirements on an initiative's sponsor before the proposal would be placed on the ballot. Among these were verification procedures for the signatures found on the petition and a requirement that initiative petitions be filed with the secretary of state 122 days preceding the next general election rather than the ninety days required in article XI, section 5. This Court determined that procedures for signature verification were constitutional as they were necessary for ballot integrity. However, this Court rejected the 122-day cutoff date, finding that there was no constitutional authority for the limitation.
Pursuant to the standard announced in this Court's opinion in Tax Relief, "[i]n considering any legislative act or administrative rule which concerns the initiative amending process, we must be careful that the legislative statute or implementing rule is necessary for ballot integrity." 386 So.2d at 566. Therefore, in the instant case, the Court must decide whether chapter 2002-390 is necessary to ensure ballot integrity. The circuit court below concluded that it was not.[3] We agree.
Article XI does not contain any language, either explicit or implicit, regarding the fiscal impact of initiatives.[4] Article XI, section 3 grants Floridians the power to amend the constitution by initiative. The requirements for exercising this power are set forth in article XI, section 3. If these requirements are met, then the sponsor of an initiative has the right to place the initiative on the ballot. However, with the passage of chapter 2002-390, an initiative's appearance on the ballot will be substantially altered, due to the addition of the fiscal impact statement. The effect of chapter 2002-390 would be to "weaken the power of the initiative process." Tax Relief, 386 So.2d at 566. Hence, we are unable to conclude that chapter 2002-390 is necessary to ensure ballot integrity.
*964 The appellants and the House of Representatives, as amicus, argue that the fiscal impact statement is necessary for the electorate to be informed. While we do not in any way diminish the importance of an informed electorate, we find that the fiscal impact statement does not go to the ballot integrity which is a prerequisite for any legislative involvement in the initiative process.
In Miami Heat Ltd. Partnership v. Leahy, 682 So.2d 198 (Fla. 3d DCA 1996), the Third District Court of Appeal considered an analogous case. In Leahy, the appellants argued that an initiative petition violated section 12-12 of the Dade County Code, which provided that "Initiative petitions proposed pursuant to Sections 7.01 or 8.07 of the Dade County Home Rule Charter shall embrace but one subject and matter directly connected therewith." The intervenor responded that the Home Rule Charter provided the sole procedure and qualifications an initiative petition must meet for submittal to the electorate and therefore section 12-12 was invalid and no single-subject requirement was applicable. The district court agreed:
We agree with the intervenor that the Home Rule Charter provides the only method for initiating referenda on ordinances and does not impose a single subject requirement. Article VIII, section 11(1)(i) of the 1885 Florida Constitution, carried forward by Article VIII, section 6(e) of the 1968 Florida Constitution, states that the Home Rule Charter "[s]hall provide a method for ... initiative and referendum, including the initiation of and referendum on ordinances...." Section 7.01 of the Charter carries out the constitutional directive and lays out a "procedure" for Dade County electors to initiate passage of or referenda on ordinances. Nowhere in that procedure is there a requirement that initiative petitions embrace only a single subject.
Id. at 202. Citing to this Court's decision in Tax Relief, the district court concluded that section 12-12 of the Code was not "necessary to ensure ballot integrity" and that such a restriction on the initiative process would strengthen the authority and power of the County Commission but weaken the power of the initiative process. Id. The district court stated that the charter was supreme and if the Board of County Commissioners wished to impose a single subject requirement on initiative petitions, it must do so by amendment to the charter itself. See id. at 203.
Similarly, in the instant case, the proper way to impose a fiscal impact requirement would be to amend article XI as the 2001 Legislature proposed by passage of House Joint Resolution 571.[5] House Joint Resolution 571 will appear on the November 2002 ballot. If Floridians wish to have a *965 fiscal impact statement included with all initiatives to amend the constitution, then they can vote to adopt House Joint Resolution 571. We emphasize that our opinion should not be interpreted as a comment on the wisdom of having or not having a fiscal impact statement included with initiatives to amend the constitution or the wisdom of adopting or not adopting House Joint Resolution 571. We only conclude that the fiscal impact statement requirement cannot be imposed on the initiative process by statute or administrative rule.
Accordingly, for the reasons expressed in this opinion, we affirm the circuit court's judgment. No motion for rehearing will be permitted.
It is so ordered.
ANSTEAD, C.J., and SHAW, PARIENTE, LEWIS, and QUINCE, JJ., concur.
WELLS, J., dissents with an opinion.
WELLS, J., dissenting.
I dissent.
I do not join the majority because I do not find that the legislative act of requiring a "fiscal impact statement" positively and certainly is opposed to the Constitution. It is on that basis that this Court's historical precedent has stated that the courts must rely in interfering with the decision of the Legislature to act. In Greater Loretta Improvement Ass'n v. State, 234 So.2d 665, 670 (Fla.1970), this Court expressly stated:
When the Legislature has once construed the Constitution, for the courts then to place a different construction upon it means that they must declare void the action of the Legislature. It is no small matter for one branch of the government to annul the formal exercise by another of power committed to the latter. The courts should not and must not annul, as contrary to the Constitution, a statute passed by the Legislature, unless it can be said of the statute that it positively and certainly is opposed to the Constitution. This is elementary.
I believe this is sound precedent and evidences proper respect for the Florida Constitution's mandate as to separation of powers as set forth in article II, section 3, and for the powers of the Legislature granted by article III, section 1.
The majority relies upon this Court's decision in State ex rel. Citizens Proposition for Tax Relief v. Firestone, 386 So.2d 561 (Fla.1980). I find the issue in that case to be totally different than the one here under consideration. In that case what was held by the Court to be unconstitutional was a time limit, which this Court's majority found to be in conflict with the time period in the express language of the Constitution. However, this Court later made clear in Krivanek v. Take Back Tampa Political Committee, 625 So.2d 840 (Fla.1993), that the Legislature had the power to reasonably regulate the initiative election process.
Given its constitutional underpinnings, the right to petition is inherent and absolute. This does not mean, however, that such a right is not subject to reasonable regulation. Quite to the contrary, reasonable regulations on the right to vote and on the petition process are necessary to ensure ballot integrity and a valid election process. See, e.g., State ex rel. Citizens Proposition for Tax Relief v. Firestone, 386 So.2d 561 (Fla.1980) (legislature and secretary of state may impose reasonable regulations on process of petition validation to ensure expeditious and proper verification of petition signatures).
Krivanek, 625 So.2d at 843 (emphasis added). Indeed, the Legislature has regulated the process by the requirements of sections 99.097, 100.371, and 101.161, Florida *966 Statutes. This Court has on various occasions stricken initiatives from the ballot for failure to adhere to the requirements of section 101.161. See, e.g., Advisory Opinion to the Attorney Gen. re Fish & Wildlife Conservation Comm'n, 705 So.2d 1351, 1355 (Fla.1998). Moreover, this Court has even stricken an adopted initiative from the Constitution based upon this statutory requirement. Armstrong v. Harris, 773 So.2d 7, 16 (Fla.2000).
Nor can I agree with the majority's statement that because article XI, section 3, is self-executing, "the Legislature only has limited authority to adopt regulations that affect the initiative process." Majority op. at 962. The fact that a constitutional provision is self-executing and can be implemented without the aid of legislative enactments should in no way restrict the Legislature's power to enact those reasonable regulations that are not positively and certainly opposed to the Constitution. See Greater Loretta, 234 So.2d at 670. A self-executing constitutional provision does not preempt the regulatory field so as to inhibit legislative power. Cf. Gray v. Bryant, 125 So.2d 846, 851 (Fla.1960) ("The fact that the right granted by the provision may be supplemented by legislation ... does not of itself prevent the provision from being self-executing.").
Likewise, I cannot agree with the majority that the fact that the requirement for a fiscal impact statement in respect to initiatives has been placed on this November's ballot by the Legislature so that voters can make a fiscal impact statement a constitutional requirement is relevant to the present issue. The fact that the Legislature decided to have on the November ballot an amendment which would make fiscal impact statements a constitutional requirement in no way diminishes the Legislature's power to adopt such a requirement by statute. Such an amendment is not necessary for the Legislature to possess such authority. Its inclusion in the Constitution would, however, assure that the requirement of a fiscal impact statement could not be stricken from the statutes in the future without an amendment adopted by the people.
Respondents have argued that the fiscal impact statement requirement can be the subject of government abuse by giving the government the opportunity to predict a high number or low number depending on whether the government favors or disfavors the initiative. I believe this contention misses the real issue for this Court to decide at this time. This is a facial attack upon the constitutionality of the statute. In this facial attack, the issue is neither the content of a particular fiscal impact statement nor the process by which the numbers in a fiscal impact statement were deduced. Rather, the sole question here is whether the Constitution bars the Legislature from legislating the requirement for a fiscal impact statement.
A challenge to the specific fiscal impact statements in this case would be an as-applied challenge to the statute, which is not before this Court. Therefore, I do not believe that the specter of manipulation or any kind of specter of bad faith on the part of the Legislature in respect to these fiscal impact statements has any role in respect to the present issue to be decided. To the contrary, here, as in every facial constitutional attack, the judicial branch has an obligation to afford the legislative branch the presumption that the legislative branch adopted a statute in good faith. Smathers v. Smith, 338 So.2d 825, 826-27 (Fla.1976).
As to the facial constitutionality of the fiscal impact statement requirement, the majority concludes that the effect of this requirement would be to "weaken the power of the initiative process." Majority op. at 963 (quoting Tax Relief, 386 So.2d at 566). In support of its conclusion, the majority analogizes this case to Miami Heat Ltd. *967 Partnership v. Leahy, 682 So.2d 198, 202 (Fla. 3d DCA 1996), in which the Third District Court of Appeal held that a county code section that imposed a single-subject rule on the initiative petition process in Dade County was invalid under the Dade County Home Rule Charter, which did not have a single-subject requirement for citizens initiatives. The Leahy court reasoned that the charter provision addressing that process was self-executing, and therefore a county code section that weakened the power of the initiative process was invalid if not "necessary to ensure ballot integrity." Id. Leahy is inapplicable to the case at hand because a single subject rule clearly changes the requirements for what the people can propose in an initiative. The fiscal impact statement requirement of chapter 2002-390 just as plainly does not change the requirements as to what the people can provide. Thus, I agree with the Third District's conclusion in Leahy, but I do not agree that the fiscal impact is analogous to the Leahy situation or that fiscal impact information per se "weakens the power of the initiative process." Knowledge is strength, not weakness.
Finally, I note the information in the Florida House of Representatives' amicus brief, which was not contested by respondents, that twenty-four states provide for constitutional or statutory amendments by citizen initiatives. Of those states, over forty percent have a statutory requirement for fiscal impact statements. Obviously, it is sound policy to have informed voters. I do not find anything in the Florida Constitution which prohibits the Florida Legislature from enacting a statute which would join these other states in having a statutorily required fiscal impact statement so that, as in those other states, Florida's voters have this information with the ballot summaries.
I do not agree with the majority's attempt in footnote 4 to minimize the fact that this substantial number of other states have this statutory requirement. What the Nevada Constitution, to which the majority's footnote refers, provides is the same power this Court has recognized the Florida Legislature has in section 101.161, Florida Statutes. As noted earlier in this opinion, if the Florida Legislature does not have the power to enact section 101.161 without the Nevada provision being expressed in the Constitution, then this Court has repeatedly erred in prohibiting initiatives from being on the ballot on the basis of noncompliance with that section.
NOTES
[1] We note that the Legislature has proposed a constitutional amendment which would require a fiscal impact statement to be placed on the ballot for all future proposed constitutional amendments by initiative. The citizens of this state will be given the opportunity to vote on this amendment in the November 2002 election.
[2] The two groups are the Coalition to Reduce Class Size and the Pre-K Committee.
[3] We review the circuit court's legal finding de novo. See Operation Rescue, 626 So.2d at 670.
[4] In its amicus brief, the House of Representatives asserts that ten states have statutory fiscal impact requirements for initiatives even though the right of initiative is provided for in the state constitutions of the respective states. The House adds that these fiscal impact requirements have not been challenged in any of these states. However, we note that there are differences between our state constitution and some of the other state constitutions. For instance, article 19, section 5 of the Nevada Constitution provides that "[t]he provisions of [the initiative] article are self-executing but the legislature may provide by law for procedures to facilitate the operation thereof." There is no such grant of legislative authority in article XI of the Florida Constitution.
[5] House Joint Resolution 571 provides in relevant part:

A joint resolution proposing a revision of Article XI, Section 5 of the State Constitution requiring the Legislature to provide by general law for the provision of an economic impact statement of each amendment proposed by initiative to the State Constitution prior to its adoption by the voters of the state. Be It Resolved by the Legislature of the State of Florida:
That the amendment to Section 5 of Article XI of the State Constitution set forth below is agreed to and shall be submitted to the electors of Florida for approval or rejection at the general election to be held in November 2002:
SECTION 5. Amendment or revision election.
. . . .
(b) The legislature shall provide by general law, prior to the holding of an election pursuant to this section, for the provision of a statement to the public regarding the probable financial impact of any amendment proposed by initiative pursuant to Section 3.