THE LEAGUE OF WOMEN
VOTERS OF FLORIDA, COMMON
CAUSE, ROBERT ALLEN
SCHAEFFER, BRENDA ANN
HOLT, ROLAND SANCHEZ-
MEDINA, JR., JOHN STEEL
OLMSTEAD, RENO ROMO,
BENJAMIN WEAVER, WILLIAM
EVERETT WARINNER, JESSICA
BARRETT, JUNE KEENER,
RICHARD QUINN BOYLAN, and
BONITA AGAIN,

      Appellants,

v.

KEN DETZNER and PAM BONDI,
KEN DETZNER, THE FLORIDA
SENATE, FLORIDA STATE
CONFERENCE OF THE NATIONAL
ASSOCIATION FOR THE
ADVANCEMENT OF COLORED
PEOPLE BRANCHES and FLORIDA
STATE ASSOCIATION OF
SUPERVISORS OF ELECTIONS,
INC., the FLORIDA HOUSE OF
REPRESENTATIVES, WILL
WEATHERFORD, in his official
capacity as Speaker of the Florida
House of Representatives, the
FLORIDA SENATE; and DON
GAETZ, in his official capacity as
President of the Florida Senate,

      Appellees.
_____/

IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D14-3953

**CORRECTED PAGES: pg 13**
**CORRECTION IS UNDERLINED IN RED**
**MAILED: October 1, 2014**
**BY: NMS**

Opinion filed October 1, 2014.

An appeal from the Circuit Court for Leon County.
Terry P. Lewis, Judge.

David B. King, Thomas A. Zehnder, Frederick S. Wermuth, and Vincent Falcone III of King, Blackwell, Zehnder & Wermuth, P.A., Orlando; Gerald E. Greenberg and Adam M. Schachter of Gelber Schachter & Greenberg, P.A., Miami; John S. Mills, Andrew D. Manko, and Courtney Brewer of The Mills Law Firm, P.A., Tallahassee, for appellants.

Raoul G. Cantero, III, Jason N. Zakia, and Jesse L. Green of White and Case LLP, Miami; George T. Levesque, General Counsel, The Florida Senate, Tallahassee, for appellees.

PADOVANO, J.

This is an appeal from a final judgment of the circuit court declaring parts of the Florida Legislature's 2012 congressional redistricting plan unconstitutional and approving as a remedy a subsequent redistricting plan adopted by the Legislature in a special session. For the reasons that follow, we certify the judgment for direct review by the Florida Supreme Court.

Article V, section 3(b)(5) of the Florida Constitution provides that the supreme court "[m]ay review any order or judgment of a trial court, certified by the district court of appeal in which an appeal is pending to be of great public importance, or to have a great effect on the proper administration of justice throughout the state, and certified to require immediate resolution by the supreme court." See also Crist v. Ervin, 56 So. 3d 745 (Fla. 2010); Scott v. Williams, 107 So. 3d 379 (Fla. 2013). This grant of judicial power is implemented by Rule 9.125

2

of the Florida Rules of Appellate Procedure, see Harris v. Coalition to Reduce Class Size, 824 So. 2d 245 (Fla. 1st DCA 2002) (summarizing the requirements of article v, section 3(b)(5) and Rule 9.125), and it is often referred to as "pass-through jurisdiction." See, e.g., Florida Patient's Compensation Fund v. Rowe, 472 So. 2d 1145 (Fla. 1985).

The plaintiffs appealed the final judgment in this case to the extent that it was unfavorable to them and they now suggest that the appeal be certified for direct review by the supreme court. The defendants object to the request for certification. There is no dispute between the parties that the issue presented in the appeal is one of great public importance. Nor could there be any reasonable argument about the importance of the case. See League of Women Voters of Fla. v. Data Targeting, Inc., 140 So. 3d 510, 511, 514 (Fla. 2014) (granting a constitutional stay writ as to an earlier order in this case on the ground that the case is one of great public importance). Rather the controversy arising from the suggestion for certification centers on the immediacy requirement of article v, section 3(b)(5).

When the complaint was filed in the circuit court, the plaintiffs sought a remedy that would be implemented before the 2014 general election. However, the time consumed by the litigation itself made that impossible. As it stands now, the remedy afforded by the final judgment will not go into effect until the election

in 2016. The dispute we must resolve now is whether the issue presented by this appeal is one that requires an immediate resolution by the supreme court, given the delay in the implementation of the remedy.

The plaintiffs acknowledge that the 2016 election is approximately two years away but they contend that this case presents complex factual and legal issues and that it will require a statistical analysis not previously undertaken by an appellate court. They argue that if this court were to entertain the appeal on the merits, there would not be enough time for the Florida Supreme Court to give the case the attention it requires. In response, the defendants argue that there is no urgent need for a resolution. They point out that the cases in which courts have employed the pass-through procedure all presented a need for resolution within a matter of weeks or months. This case, they maintain, is not in the same class, because a resolution is not required for another two years.

Both sides have made good points on the immediacy issue, but we conclude that the plaintiffs have the better argument. The time needed in the trial court to consider the validity of the districts as they were originally drawn and then to review them again as they were redrawn in the special session has already caused a delay of two years in the implementation of the remedy. If the history of this case is a guide, there may not be sufficient time for intermediate appellate review. To allow the appellate process to take its full course through the completion of review

4

by this court followed by possible en banc review, could potentially put the supreme court in the position of having to delay the remedy yet again.

In this case, any doubts about the need for immediate review by the supreme court should be resolved in favor of certification. This court has already certified a prior order in this case for review by the supreme court. <u>See</u> <u>Non-Parties v. League of Women Voters of Fla.</u>, 2014 WL 2770013, at \*1 (Fla. 1st DCA June 19, 2014) (en banc). That order was appealed by third parties who were objecting to the disclosure of certain records, but it also involved the propriety of admitting evidence in the suit between the parties in this appeal. If we were to deny the suggestion for certification in this case we would be putting the supreme court in the position of reviewing an interlocutory order while the appeal from the final order is pending in this court.

It makes better sense to keep the appeals together and to certify the final judgment for direct review by the supreme court so that the entire case can be decided by that court. This disposition serves the interests of judicial economy and avoids the time and expense of piecemeal litigation. We do not suggest that practical considerations such as these can override the constitutional requirements for certification. But neither do we consider these concerns to be immaterial. The decision to certify this appeal must not be made in isolation but rather in light of all of the facts and circumstances of the case.

5

In summary, we grant the plaintiffs' suggestion for certification and certify the judgment of the trial court for direct review by the supreme court under the provisions of Article V, section 3(b)(5) of the Florida Constitution and Rule 9.125 of the Florida Rules of Appellate Procedure.

MARSTILLER, J., concurs; MAKAR, J., dissents with opinion.

MAKAR, J., dissenting.

Our emergency three-judge panel has been asked to certify the trial court's order in this pending appeal—one that is unquestionably of "great public importance"—to "require immediate resolution by the supreme court." Art. V, § 3(b)(5), Fla. Const. Because this case does not "require immediate resolution" by our supreme court, I cannot join in the panel's certification.

The phrase "require immediate resolution" has two operative components: "require" and "immediate resolution." Read together, they include only those cases with such an obviously urgent need for a truly immediate and final resolution by our supreme court that leapfrogging the intermediate appellate infrastructure is necessitated to avoid some irremediable result. Certification does not reach cases— such as this one—where immediate resolution may be deemed desirable, but is not required; nor does it reach cases where resolution of the legal issue is ultimately necessary, but not immediately so. In the thirty-four year history of section 3(b)(5), certification has almost always been withheld unless a decision from our supreme court was deemed necessary within weeks or a few months of certification. See Anstead, Kogan, Hall & Waters, The Operation and Jurisdiction of the Supreme Court of Florida, 29 Nova L. Rev. 431, 533-34 (2005) ("Usually, the cases certified in this manner truly have been pressing. . . . With rare exceptions, all

7

these cases have involved a significant level of both immediacy and finality of fact finding.") (footnote omitted).

For example, during the thirty-six days of litigation involving the 2000 presidential election—under the enormous pressure of an impending federal elections deadline—district courts of appeal justifiably used section 3(b)(5) to facilitate immediate resolution of major constitutional questions. See, e.g., Gore v. Harris, 772 So. 2d 1243, 1247 (Fla. 2000) (parties agreed that certification by district court under section 3(b)(5) was proper), rev'd sub nom. Bush v. Gore, 531 U.S. 98 (2000); see generally Anstead et al., supra, at 531 ("Its classic use was shown during the 2000 presidential election cases, in which district courts routinely certified the cases directly to the United States Supreme Court.") (footnote omitted).

Similarly, certifications in cases from this Court have been issued where truly pressing deadlines were weeks or a few months away. See, e.g., Am. Civil Liberties Union of Fla., Inc. v. Hood, 881 So. 2d 664 (Fla. 1st DCA 2004) (passing through issue of proposed constitutional amendment being placed on ballot in upcoming election, as being of great public importance requiring immediate resolution by the Supreme Court), review granted, 882 So. 2d 384 (Fla. 2004); see also Harris v. Coalition to Reduce Class Size, 824 So. 2d 245 (Fla. 1st DCA 2002) (certifying case where issue concerned education coalition suit to enjoin the

Department of State from placing fiscal impact statement on initiative approved by the Supreme Court for inclusion on the immediate general election ballot), review granted, 823 So. 2d 123 (Fla. 2002), affirming the judgment, Smith v. Coalition to Reduce Class Size, 827 So. 2d 959 (Fla. 2002).

The notion that a case is so important or has such complexity that a district court should punt it immediately to the supreme court was rejected almost three decades ago. In an oft-cited case (and the rare one without an urgent need for immediate resolution), the Florida Supreme Court made clear that section 3(b)(5) did not create a baton to be passed to avoid the tough, pressing cases.

> Although we accepted jurisdiction in this case to resolve what may be construed as a pressing issue, we admonish the district courts in the future to discharge their responsibility to initially address the questions presented in a given case. Article V, section 3(b)(5) is not to be used as a device for avoiding difficult issues by passing them through to this Court.

Carawan v. State, 515 So. 2d 161, 162 n.1 (Fla. 1987). Rather, the history of section 3(b)(5) reflects an understanding that it should be invoked only when the crunch of time is so great that a final decision of our supreme court must be made *now*. Id. ("The constitution confines this provision to those matters that 'require immediate resolution by the supreme court.'").

Given the exceptionally high bar that section 3(b)(5) sets, the constitutionally-required degree of immediacy does not exist in this case. Unlike cases such as Bush v. Gore, Hood, and Harris, where an imminent election was

9

looming days, weeks, or a few months away, the situation here is far different. This case involves only the question of the validity of the legislatively-redrawn districts that would apply in the 2016 election cycle, an election that is more than two years down the road. Section 3(b)(5)'s time horizon—which has never exceeded more than a few months—should not be expanded to a matter whose resolution is not necessitated for over a year. In cases truly requiring immediate resolution by the supreme court, that court accepts review, sets an accelerated briefing and argument schedule, and thereafter issues an expedited decision. Applied to this case, this type of timetable would produce a decision by the end of 2014—one resolved with alacrity but thereafter sitting on the shelf unneeded until 2016. That can't be what the framers of the 1980 constitutional amendment intended.

Notably, the trial court's ruling that the original legislative plan was constitutionally defective is not an issue in this appeal, the defendants having accepted the judgment; the issue presented here is the appropriate remedial plan (one adopted by the Florida Legislature in special session or some other plan the plaintiffs urged the trial court to adopt). As such, the pendency of the interlocutory appeal involving the constitutional privilege of non-parties, Non-Parties v. League of Women Voters of Florida, 39 Fla. L. Weekly D1300 (Fla. 1st DCA June 19, 2014), review granted, 2014 WL 3696491 (Fla. 2014), has no relevance in this

10

appeal; the evidence that the parties are fighting over in <u>Non-Parties</u> goes to the merits of the constitutional questions, not the remedy. Because the supreme court's resolution of <u>Non-Parties</u> has no apparent effect on the issues in this case, basing certification on administrative convenience or judicial economy is unjustified—and beyond the operative language of section 3(b)(5). And certifying a matter as "requiring immediate resolution" may be an adroit way of shifting the burden to the supreme court to decide whether the requisite degree of immediacy exists (since they can reject the certification); but I am skeptical that doing so is the way to go when time is clearly not of the essence.

A few final observations. The first is one made recently by Judge Altenbernd in his dissenting opinion from the Second District's certification under section 3(b)(5) in <u>Shaw v. Shaw</u>, 39 Fla. L. Weekly D1813 (Fla. 2d DCA Aug. 27, 2014). There, he disagreed with certification because district courts of appeal frequently "consider countless questions of great public importance [and] pass through these questions only when they have a level of statewide urgency." <u>Id.</u> at *3 (Altenbernd, J., dissenting). Pertinent here, he said that "[i]f we believe the case has some immediacy, we should not grant extensions in this case but should expedite the process." <u>Id.</u> Citing his dissent with approval, the supreme court declined jurisdiction "at this time," leaving open review at a later date. 39 Fla. L. Weekly

S561a (Fla. Sept. 5, 2014). A similar result seems appropriate here, where plenty of time is available for district court review (whether expedited or not).

The second observation is that both this Court and the supreme court have shown the facility to resolve cases with high priorities in a timely way.[1] With eighteen to twenty-four months of judicial time ahead, the issues in this case can be ultimately resolved by the supreme court after a stopover in this Court; it may be that this Court's decision is one in which a majority of the supreme court agrees, making certification a superfluous step. Indeed, if this case is certified now, and the supreme court accepts review, it will likely become one of numerous cases (high profile and otherwise) that make up its crowded docket. In the time the case is on the supreme court's docket awaiting disposition, a decision of this Court would have been issued expeditiously. For example, the panel in Non-Parties had prepared opinions for release within two weeks of the case being docketed, and we now have expedited en banc procedures in place to avoid delays that process might otherwise impose; the likelihood of a dilatory decision from this Court is trivial. Moreover, the supreme court would benefit from written opinions, even if they express different viewpoints, as was reflected in the supreme court's reliance in its legislative privilege decision in League of Women Voters of Florida v. Florida

---

[1] In original reapportionment cases, the supreme court adjudicates disputes in thirty days. Art. III, § 16(c), Fla. Const. ("The supreme court, in accordance with its rules, shall permit adversary interests to present their views and, within thirty days from the filing of the petition, shall enter its judgment.").

House of Representatives, 132 So. 3d 135 (Fla. 2013), in which it relied on the dissenting opinion in this Court's decision in Florida House of Representatives v. Romo, 113 So. 3d 117 (Fla 1st DCA 2013). See also Fla. Dep't. of Agric. & Consumer Servs. v. Haire, 824 So. 2d 167 (Fla. 2002) ("If we eventually are called upon to adjudicate the constitutionality of [the statute at issue] or any related issues, our decision will be a more informed one because of that intermediate appellate review.") (Pariente, J., concurring).

In conclusion, this case is not one requiring the immediate resolution by the supreme court. Simply because a case is very important does not make its "immediate resolution by the supreme court" necessary. Certification under section 3(b)(5) amounts to a 9-1-1 call to the Florida Supreme Court: "You're needed *now*!" That call is not justified in this case, ample time existing for the normal appellate process to be followed over the next two years. This Court can handle the matter expeditiously, leaving more than adequate time for supreme court review, if it deems it necessary.