NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

DEANNA WILLIAMS, JONATHAN A.      )
HELLER, and LAW OFFICES OF        )
JONATHAN A. HELLER, P.A.,         )
                                  )
          Appellants,             )
                                  )
v.                                )      Case No.  2D15-3411
                                  )
VICTIM JUSTICE, P.C.; JOHN CLUNE; )
MICHAEL DOLCE; DOLCE LAW, P.A.;   )
PETER ITZLER; and ITZLER & ITZLER,)
P.A.,                             )
                                  )
          Appellees.              )
_____  )

Opinion filed March 9, 2016.

Appeal pursuant to Fla. R. App. P. 9.130
from the Circuit Court for Lee County;
Michael T. McHugh, Judge.

Jonathan A. Heller of the Law Offices of
Jonathan A. Heller, P.A., Miami; and
Richard Johnston, Fort Myers, for
Appellants.

Scott A. Mager of Mager Dolce & Paruas,
LLC, Hollywood; and Joseph Thacker,
Thacker, Martinsek, L.P.A, Naples, for
Appellees Victim Justice, P.C., John Clune,
Michael Dolce, and Dolce Law, P.A.

No appearance for remaining Appellees.


LaROSE, Judge.

Deanna Williams, Jonathan Heller, and the Law Offices of Jonathan

Heller, P.A., appeal a nonfinal order granting Victim Justice, P.C., John Clune, Michael

Dolce, and Dolce Law, P.A.'s, motion to preserve assets. The order stems from these

appellees' quantum meruit lawsuit to collect fees and costs for their prior representation

of Ms. Williams in a personal injury suit.[1]  Effectively, the order enjoins the disbursement

of funds held in the Heller law firm's trust account that were received in settlement of

that earlier lawsuit.  We have jurisdiction, see Florida Rule of Appellate Procedure

9.130(a)(3)(B), and reverse.

In 2009, Ms. Williams hired Itzler and Itzler, P.A. to represent her in a

personal injury case.  Mr. Clune and his law firm, Victim Justice, later joined with the

Itzler firm to represent Ms. Williams.  At some point, the Itzler law firm ended its

representation of Ms. Williams.  We do not know why.  Victim Justice then teamed with

Mr. Dolce and his law firm to represent Ms. Williams.  We note that all counsel

representing Ms. Williams did so on a contingency fee basis.

In the summer of 2013, Mr. Clune, Victim Justice, and Mr. Dolce and his

law firm ended their representation of Ms. Williams.  They filed a motion in the personal

injury lawsuit to withdraw as counsel.  Allegedly, Ms. Williams was uncooperative.

Appellants, on the other hand, claim that the Heller law firm withdrew because Ms.

Williams did not want to settle the personal injury lawsuit and insisted on going to trial.

Although the exact reason for the termination of representation remains a mystery to us,

---

[1]Peter Itzler and Itzler & Itzler, P.A., were defendants below.  They have not entered an appearance in this appeal.  Appellants have properly aligned them as appellees.  Fla. R. App. P. 9.020(g)(2).

we do know that the trial court granted the motion to withdraw. The trial court "found that bases exist for withdrawal under Rule 4-1.16(a) and (b) of the Rules of Professional Conduct."[2] The trial court did not elaborate further. Of course, the law is clear that an attorney employed on a contingent fee contract who voluntarily withdraws before the contingency has occurred forfeits his or her rights to compensation, unless "the client's

---

[2]Florida Bar Rule of Professional Conduct 4-1.16 provides, in pertinent part, as follows:

**RULE 4-1.16 DECLINING OR TERMINATING REPRESENTATION**
　　**(a) When Lawyer Must Decline or Terminate Representation.** Except as stated in subdivision (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
　　　　(1) the representation will result in violation of the Rules of Professional Conduct or law;
　　　　(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client;
　　　　(3) the lawyer is discharged;
　　　　(4) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent, unless the client agrees to disclose and rectify the crime or fraud; or
　　　　(5) the client has used the lawyer's services to perpetrate a crime or fraud, unless the client agrees to disclose and rectify the crime or fraud.
　　**(b) When Withdrawal is Allowed.** Except as stated in subdivision (c), a lawyer may withdraw from representing a client if:
　　　　(1) withdrawal can be accomplished without material adverse effect on the interests of the client;
　　　　(2) the client insists upon taking action that the lawyer considers repugnant, imprudent, or with which the lawyer has a fundamental disagreement;
　　　　(3) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;
　　　　(4) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or
　　　　(5) other good cause for withdrawal exists.

- 3 -

conduct makes the attorney's continued performance of the contract either legally impossible or would cause the attorney to violate an ethical rule of the Rules Regulating The Florida Bar." Faro v. Romani, 641 So. 2d 69, 71 (Fla. 1994).

Thereafter, Mr. Heller and his law firm took Ms. Williams on as a client. Within a few months, Mr. Heller settled her personal injury case. Our record does not disclose the settlement terms. Appellees surmise that the settlement amount was not much more than the offers they obtained while representing Ms. Williams.

Appellees did not file a charging lien in the personal injury lawsuit.[3] Instead, they instituted a new action against appellants. Pursuing a quantum meruit theory of recovery, they claim entitlement to some portion of the settlement proceeds for their efforts on Ms. Williams' behalf. To forestall the further disbursement of settlement funds held by the Heller law firm, appellees filed a motion to preserve assets. They submitted no verified pleadings or affidavits in support of the motion. The trial court referred the motion to a magistrate who heard argument on the motion. No party presented evidence. Appellees feared that, absent a freeze of the funds, they might be unable to secure any meaningful relief if they succeeded on their quantum meruit claim. Appellees argued that appellants had a duty to disgorge any fees and to return any disbursed funds because they had been on notice of a charging lien. Appellants noted that appellees never filed a charging lien. Appellants also maintained that appellees were asking for the entry of a temporary injunction without an evidentiary hearing or bond.

---

[3]In the complaint, appellees allege that they served notices of charging liens for their fees and costs. They concede that these notices were not filed with the trial court.

The magistrate recommended that the trial court grant the motion to preserve assets, finding that:

> Any assets presently in the custody of Law Offices of Jonathan A. Heller, P.A., derived from, or related to, their representation of Deanna Williams should be frozen, withheld and not distributed or spent. An order protecting the assets is designed not to allow wasting of assets nor permit harm to any party. The final determination of whether or not the frozen funds should be released should be made after the trial of the cause.

The trial court adopted the magistrate's report and recommendation and entered the order now before us.

An order requiring a party to preserve assets is a temporary injunction. Kountze v. Kountze, 20 So. 3d 428, 433 (Fla. 2d DCA 2009) ("The trial court's order required the appellants to maintain the status quo regarding the assets in question. Thus the order was in the nature of temporary injunctive relief."). There can be no question but that appellees sought injunctive relief. Indeed, they specifically asked the trial court to enter an injunction or other order protecting the settlement funds.

"A trial court's ruling on a motion for a temporary injunction is clothed with a presumption of correctness, subject to reversal only for an abuse of discretion." Orkin Extermination Co. v. Tfank, 766 So. 2d 318, 319 (Fla. 4th DCA 2000). We review the entry of a temporary injunction as a mixed question of law and fact. "To the extent an injunction rests on factual matters, the injunction lies within the sound discretion of the court and will be affirmed absent a showing of abuse of discretion." Morgan v. Herff Jones, Inc., 883 So. 2d 309, 313 (Fla. 2d DCA 2004) (citing Smith v. Coalition to Reduce Class Size, 827 So. 2d 959, 961 (Fla. 2002)). "However, to the extent it rests on purely legal matters, the order is subject to full, de novo review on appeal." Id. We

are also mindful of the admonition that a temporary injunction "should be granted only sparingly and only after the moving party has alleged and proved facts entitling it to relief."  Id.

To demonstrate entitlement to a temporary injunction, appellees had to demonstrate "(1) a likelihood of irreparable harm and the unavailability of an adequate remedy at law; (2) a substantial likelihood of success on the merits; (3) a threatened injury to the petitioner that outweighs any possible harm to the respondent; and (4) that the granting of the injunction will not disserve the public interest."  Polk Cty. v. Mitchell, 931 So. 2d 922, 926 (Fla. 2d DCA 2006); see also Liberty Fin. Mortg. Corp. v. Clampitt, 667 So. 2d 880 (Fla. 2d DCA 1996) (reversing injunction where the order did not address the likelihood of success on the merits).

Florida Rule of Civil Procedure 1.610(c) requires that every injunction entered by a trial court "shall specify the reasons for entry, [and] shall describe in reasonable detail the act or acts restrained without reference to a pleading or another document."  We have observed that "the trial court's order must contain '[c]lear, definite, and unequivocally sufficient factual findings [to] support each of the four conclusions necessary to justify entry of a preliminary[4] injunction.' "  Clampitt, 667 So. 2d at 881 (quoting City of Jacksonville v. Naegele Outdoor Advert. Co., 634 So. 2d 750, 754 (Fla. 1st DCA 1994)); Randolph v. Antioch Farms Feed & Grain Corp., 903 So. 2d 384, 385 (Fla. 2d DCA 2005) ("Of primary importance is the trial court's obligation to state

---

[4]The 1984 amendments to Florida Rule of Civil Procedure 1.610 deleted references to preliminary injunction and temporary restraining order and replaced them with temporary injunction.  In re Amendments to Rules of Civil Procedure, 458 So. 2d 245, 256 (Fla. 1984).  Courts have used the terms preliminary and temporary injunctions interchangeably.  We find no substantial difference between the two.

sufficient factual findings in support of each element entitling a party to a temporary injunction. . . . The single error of failing to provide sufficient findings requires us to reverse and remand for further proceedings.").  The trial court's order fails this requirement.

Neither the order nor the magistrate's report and recommendation recite sufficient factual findings to show us that appellees satisfied each element needed for entry of a temporary injunction.  On this basis, alone, we must reverse and remand for further proceedings.  See Randolph, 903 So. 2d 384 (Fla. 2d DCA 2005).  It appears to us that there were disputed issues of fact between the parties.  Yet, to our knowledge, neither the magistrate nor the trial court held an evidentiary hearing.  Thus, substantial, competent evidence was not provided to establish entitlement to a temporary injunction.

We must also note that Florida Rule of Civil Procedure 1.610(b) requires that a bond be set for the issuance of a temporary injunction.  The trial court did not require a bond.  This, too, was error.

Because the trial court committed legal error in granting the motion to preserve assets, we reverse and remand for further proceedings.

Reversed and remanded.


WALLACE and CRENSHAW, JJ., Concur.